## DESHA'S EXRS. VS. ROBINSON ADMR.

Each party's pleading is to be taken most strongly against himself; but pleas in bar are not to be construed with the severity which is applied when testing dilatory pleas, and will be deemed sufficient, if by rational intendment they meet the cause of action in matter of substance.

To an action upon a note payable to the Real Estate Bank and assigned to the plaintiff, the defendant pleaded that the consideration of the note was the transfer and assignment of the control and management of an execution, then in the hands of the sheriff, and of all executions to be issued thereafter, on a judgment in favor of the Bank against S. and R.; that the execution was returned unsatisfied, except as to a partial payment made out of the property of one of the defendants; that another execution was issued upon the judgment, of which the Bank, subsequently, while it was in the hands of the sheriff, took the control and direction, and caused it to be returned, while it was unsatisfied and the money still due and unpaid, without the consent and against the will of defendant, whereby the consideration of the note sued on had failed—in all which the plaintiff, as agent of the Bank, participated:

HELD, 1st. That as the plea did not negative the fact, that the money made on the execution was paid to the defendant, the rule, that all pleadings will be construed most strongly against the party pleading, will so intend.

2. That the facts set up in the plea did not show a total failure, nor a total want of consideration; nor do they constitute a bar to the action, upon the principle of rescision of contracts; but as the assignee was entitled to a cross action for damages for the breach of the contract on the part of the Bank, in taking control of the execution and causing it to be returned, the defendant might recoup such damages.

A party to a contract will not be allowed to repudiate or rescind it, where the failure of performance by the opposite party was but partial and without fraud, leaving in his hands a subsisting and executed part performance; nor where it is impossible for both parties to be restored to the condition in which they were before the contract was made.

And even in cases of fraud, the party seeking to rescind a contract, must, within a reasonable time after the fraud comes to light, make his election and proceed to rescind by a return or offer to return whatever he may have received under the contract of any value whatever to either party.

In all that class of cases, commonly called failure of consideration, whether involving bad faith or not, or where fraud has intervened, or there has been a breach of war-

ranty, fraudulent or not, or of any other stipulation of the contract sued upon, enti-
tling the defendant to a cross action against the plaintiff to recover damages for such
failure, fraud or breach, he may, instead of resorting to such cross action, recoup the
damages sustained by him.

The cases of *Wheat et al. vs. Dotson*, 7 *Eng.* 699; *Smith vs. Capers*, 13 *Ark.* 9: and *Robinson vs. Mace*, 16 *Ib.* 97, as to recoupment, approved; also the cases of *Clark vs. Moss et al.*, 6 *Eng.* 736, and *Ware & Miller vs. Pennington et al.*, *Ib.* 745, as to the assignment of judgments by parol.

Where a part of the plaintiff's declaration is unanswered by the plea, he may take judgment therefor, but if he fails to do so, it is his own laches, and this court will not reverse the judgment for that cause.

*Appeal from the Circuit Court of Independence County.*

Hon. WILLIAM C. BEVENS, Special Circuit Judge.

FOWLER, for the appellant.

WM. BYERS, for the appellee.

Mr. Justice SCOTT delivered the opinion of the Court.

For the understanding of all the questions arising in this case, it will be sufficient to state, that this was an action of debt : That the plaintiffs below declared as assignee of the Real Estate Bank, upon a promissory note for $800, dated the 8th day of July, 1841, at six months. *Nil debet* was pleaded ; to which issue was taken, and also a special plea, of which the following is a copy, to wit :

*Actio non*, because, he says that, at or some time prior to 8th of July, 1841, the Real Estate Bank of the State of Arkansas had issued an execution against John Robinson and Rufus Stone, on a judgment obtained by said bank against them, in the Circuit Court of Pulaski county, on the 14th of November, 1840 ; the said John and Rufus had been made liable to said bank for having before then become bound to said bank, as securities for one Robert T. Dunbar, by a note for $800 given to the bank, which execution was in the hands of the sheriff of Jackson county, on the 8th of July, 1841, the said John and Rufus then residing

in said county, and said execution was'so in the hands of the sheriff of Jackson county, for the purpose of being made out of said John and Rufus.

" And this defendant further says, that this defendant's testator, William Robinson, deceased, James J. Waddell, Alexander Robinson and Samuel Robinson, had prior to said 8th July, 1841, signed a note in blank, to the said Real Estate Bank, which was afterwards filled up with the sum of $800, which note was by them signed in blank, on or about the 21st of June, 1841, and is the note now sued on, which note in blank of said Waddell, Alexander Robinson, Samuel Robinson and this defendant's testator, was by them sent to Little Rock; that by the delivery of it to said Real Estate Bank, after being filled up in such sum as should be demanded by said Real Estate Bank, the control of said execution could be purchased, and obtained from said bank by this defendant's testator and one Nathan Haggard, and such proceedings and negotiations were had, by and between said Real Estate Bank, and said Waddell, Alexander Robinson, Samuel Robinson and this defendant's testator, by their agent duly authorized to act for them in that behalf, that on or about said day, to wit: 8th July, 1841, it was agreed between the said parties, that said blank note should be filled up with the sum of $800, and should be delivered to said Real Estate Bank, and that the said Waddell, Alexander Robinson, Samuel Robinson and William Robinson should, in addition, pay to said bank, certain sums that were due on said judgment and execution, as interest due, costs of protest, and costs on said execution, and advance interest, all of such sums amounting to a large sum of money, to wit: the sum of $148 47, and for said note and money it was agreed by and between the said Real Estate Bank, and the said Waddell, Alexander Robinson, Samuel Robinson and this defendant's testator, that said William Robinson and Nathan Haggard should have control of said execution, and have a right to direct what should be done therewith, and thereupon, and the right, upon the return of said execution unsatisfied, to direct and control the further is-

suance and use of any execution and executions upon said judgment, till the same should be satisfied according to law.

And pursuant to such agreement, the said William Robinson and the defendant's testator, Alexander Robinson, Samuel Robinson and James J. Waddell, had the said blank filled up in the sum of $800, and then, to wit: on 8th July, 1841, which is the note here sued on, and delivered the same to said Real Estate Bank, and also in other respects, complied with their said agreement by paying the said sum of money, and the Real Estate Bank, for said note and money, then gave the control and direction of the said execution that was then in the hands of the sheriff of Jackson county to said Nathan Haggard, and this defendant's testator, for the use and benefit aforesaid, and also promised to, and contracted with the said Waddell, Alexander Robinson and William Robinson, this defendant's testator, that said Haggard and William Robinson should have the control, direction and use of all further executions issued on said judgment, and the right to direct the issuance and return of executions on said judgments according to law, till the same was satisfied, and that the rights and interest of the Real Estate Bank in and to said execution, and all further execution that might be issued thereon, should be transferred to the said Nathan Haggard and William Robinson, which said agreement of the said Real Estate Bank was the only consideration of the note sued upon.

And this defendant says, that on the making and consummating of this agreement, contract and purchase of the control and direction of said execution, and the right to issue and control further executions in the collection of said judgment, John Robinson acted as agent for, and on behalf of said Waddell, Alexander Robinson, Samuel Robinson and this defendant's testator, William Robinson.

And this defendant further says, that the said execution, which was then, to wit: 8th July, 1841, in the hands of the sheriff of Jackson county, was not satisfied so that the sum of——expressed in it, still remained due and unpaid, till the time hereafter men-

tioned (except the sum of two hundred and twenty-six dollars that were collected out of the property of John Robinson), to wit: on the 8th July, 1842, when another execution was issued to make the same money that was represented by the execution that was out on the 8th of July, 1841, issued from the office of clerk of the Circuit Court of Pulaski county, which last execution was returnable to the March term, 1843, of said court.

And before the return of said execution, which had come to hands of James Robinson, sheriff of Jackson county, and before any portion of the consideration for which said note had been given was paid the said Real Estate Bank, notwithstanding its said agreements and contracts with said Waddell, Alexander Robinson, Samuel Robinson and William Robinson, took the control and direction of said execution, issued for the purpose of making the sum expressed to be due in the execution issued, and in hand of the sheriff on the 8th July, 1841, away from said Nathan Haggard and William Robinson, and through William F. Denton, their agent in that behalf, directed the said sheriff to return said execution, which was done on the 14th of November, 1842, and while the said execution was unsatisfied, and while the money in it was still due and unpaid, which order was obeyed by the said sheriff, which direction of the Real Estate Bank and act of the sheriff of Jackson county, in obedience thereto, was made without and against the will and consent of Nathan Haggard and William Robinson. Wherefore, this defendant says, that the whole consideration for the giving and delivery and existence of said note, which is the note sued, has wholly failed by the said wrongful and illegal act of the Real Estate Bank in relation thereto, in which the said William F. Denton, who is the plaintiff's testator, participated, and all of which he knew and all this said defendant is ready to verify. Wherefore, he prays judgment, if the plaintiffs ought to have or maintain their said action against him as aforesaid.

This plea was verified by affidavit, and filed the 19th day of March, 1855.

The opposite party interposed a demurrer, assigning for cause, that the facts detailed did not show any failure of consideration, otherwise than by a mere deduction of law, and that, after the transfer of the judgment and execution, as set up in the plea, the bank could take no such control over the process of execution, or of the sheriff in regard thereto, as could oust the control of appellee, or deprive him of the proceeds of the execution and judgment. But the court overruled the demurrer, and the plaintiff below saying nothing further, and electing to stand on his demurrer, the court rendered final judgment, and the plaintiffs below appealed to this court.

The ruling of the court below upon the demurrer is the only matter insisted upon in this court as error by the counsel for the appellants.

Proceeding, then, to determine this point, we must necessarily scrutinize the plea, and ascertain, if we can, the legal effect of the matters therein set up upon the appellants' alleged right of recovery upon the contract on which their suit is founded. If they be not an absolute bar to any right of recovery upon this contract, they may, by possibility, be of sufficiency to mitigate or diminish the amount which would otherwise be recoverable.

Doubtless, pleas in bar are never construed with the severity which is applied in testing pleas which are merely dilatory; and are always to be taken according to their entire subject matter, and will be sustained accordingly, as taken altogether; and are not to be determined by a disjointing of their members, or by laying stress on what may be immaterial, or upon the prayer for judgment, or conclusion of such pleas. If, therefore, by rational intendment, they meet the cause of action in matter of substance, they will be deemed sufficient.

This, however, in no way displaces the rule, that each party's pleading is to be taken most strongly against himself, and most favorably to his adversary. A rule founded not only upon the presumption, that each party's statement is the most favorable to himself of which his case will admit; but, also, upon the obviously rea-

16c

sonable principle, that it is incumbent on each pleader, in sta-
ting his ground of action or defence, to explain himself fully
and clearly. Any ambiguity, uncertainty, or omission in the
pleadings, must, therefore, be at the peril of the party in whose
allegations it occurs. *Gould's Plead., chap.* 3, *sec.* 169.

Among the examples given by the author, for the application
of this rule, is that of a defendant in trespass pleading a general
release, without stating the time of the execution, which he says,
in such case, shall be intended to have been made before the tres-
pass was committed. So, also, the case of a defendant's plead-
ing, to debt on bond payable on a given day, payment or tender,
without alleging the time, the legal intendment must be that it
was made after the day appointed for payment.

This would seem to be sufficient authority for an intendment,
as to the plea before us, against the pleader, that the two hun-
dred and twenty-six dollars, alleged to have been made on the
execution out of John Robinson, was made out of him at some
point of time between the day when the control of that process
was yielded to appellee's intestate and Haggard, and the day
when the bank wrongfully resumed control of the alias process,
as alleged in the plea.

When this is done, then a rational construction of the plea
presents substantially this case—*that is to say :* That in July,
1841, the bank having a judgment against John Robinson and
Rufus Stone, recovered in 1840 on a note for $800, and having
sued out process of execution thereon, which was then in the
hands of the sheriff of Jackson county, to be levied, in considera-
tion of the execution of the note here sued on, and its delivery
to the bank, and the additional consideration of $148 47, which
was paid to the bank in cash, in pursuance of an agreement to
that effect, "then gave the control and direction of said execution,
which was then in the hands of the sheriff of Jackson county, to
the said Nathan Haggard and this defendant's testator, for the
use and benefit aforesaid ; and also, promised to, and contracted
with the said Waddell, Alexander Robinson, Samuel Robinson

and William Robinson, this defendant's testator, that said Haggard and William Robinson should have the control, direction and use of all further executions issued on said judgment according to law, till the same was satisfied; and that the rights and interest of the Real Estate Bank, in and to said execution, and all further executions that might be issued thereon, should be ransferred to the said Nathan Haggard and William Robinson."

That while Robinson and Haggard, for the use aforesaid, were in the enjoyment of the control of this particular execution, which the bank gave them in part performance of her side of the agreement, $226 were collected (by means of the execution) out of the property of John Robinson. That, afterwards, on the 8th of July, 1842, an alias execution was issued upon the same judgment, returnable to March term 1843, which came to the hands of the sheriff of Jackson county to be levied. That, before the return day, and while said alias execution was wholly unsatisfied, to wit:. in November, 1842, the bank, in disregard of her aforesaid contract, took the control and direction of this alias execution, and by her agent in that behalf, directed the sheriff to return it, which direction he obeyed. And that the said control, and said direction, and the said act of the sheriff in obedience thereto, were all without the consent, and against the will, of both the said. Haggard and William Robinson, the said appellants' testator participating in these wrongful and illegal interferences on the part of the bank.

If the matters set up in this plea be considered as matters to show either a want, or a failure of the consideration for which the contract sued upon was based, it would seem clear enough, that they would neither show a total want, nor a total failure of that consideration; because, without any special regard to the ambiguous allegation as to the $226, it is distinctly stated in the plea that the " control and direction " of the execution, that was in the sheriff's hands at the time the contract was made, was "then" in pursuance of that contract for said note and money, given to Haggard and Robinson. And in the absence of any al-

legations of interference, on the part of the bank, prior to November, 1842, it must be intended that Robinson and Haggard, also, enjoyed under the contract, the like control and direction of the alias execution, from the time of its issuance in July, 1842, up to the time of the bank's wrongful interference in the following November. Hence, if these parties purchased with their note and money, the control and direction of these executions simply for idle grandeur, from their own showing, they enjoyed it from July, 1841, until November, 1842 ; if for the more sensible purpose of securing the means of realizing the amount due upon the judgment, upon which they were issued, then, also, upon their own showing, they enjoyed this means and opportunity for a like period of time ; and in the third place, they seem actually to have realized the sum of $226, by means of the control and direction of the executions so purchased by them.

It would seem equally clear, that these matters do not constitute any bar to a recovery upon this contract, as predicated upon any supposed repudiation or rescision of it, on the part of the defendant below, for several reasons.

*First.* They could not treat it as rescinded, upon the failure of the bank as set up in the plea, because, that failure of performance, for which an action would lay, was but partial and not entire, necessarily leaving in the hands of the defendant below a subsisting and executed part consideration for the note in suit, and : " It is a clearly recognized principle, that, if there is only a partial failure of performance by one party to a contract, for which there may be a compensation in damages, the contract is not put an end to." (Per LITTLEDALE, Judge, in *Miller vs. Franklin,* 4 *Add. & Ell.* 599.) And to the like effect is the law, on this point, stated by Judge PARSONS, in his work on Contracts (2 *Pars. Contract, page* 191,) in the remark that : " Generally, where one fails to perform his part of the contract, or disables himself from performing it, the other party may treat the contract as rescinded. But not if he has been guilty of a default in his engagements, for he cannot take advantage of his own wrong

to defeat the contract. Nor, if the failure of the other party be but partial, leaving a distinct part as a subsisting and executed consideration, and leaving also to the other party his action for damages for the part not performed." And in the further remark, that : "Generally, no contract can be rescinded by one of the parties, unless both can be restored to the condition in which they were before the contract was made. If, therefore, one of the parties has derived an advantage from a partial performance, he cannot hold this, and consider the contract as rescinded, because of the non performance of the other : but must do all that the contract obliges him to do, and seek his remedy in damages."

In the next place, supposing the failure on the part of the bank, to have been a mere failure, without any ingredient of fraud, not only is the case made by the plea, one where the opposite party could not treat the contract as rescinded, but it is also a case where the law does not allow of a rescision at all, even by an act of the injured party, without the consent of the other party, either express or implied ; not merely for the lack of entire failure of consideration received, and of fraud, but also, because, from the nature of the transaction detailed in the plea, it is not possible that both parties could be restored to the condition in which they were before the contract was made. The cases of *Hunt vs. Silk*, 5 *East* 449, and *Beed vs. Blandford*, 2 *Y. & Jer.* 278, are the leading ones on this point, and in some of their main features, they are not unlike the case made by the plea, in the aspect in which we are now considering it. Both were cases of part occupation under the contract—one of a house, and the other of a ship. In the latter case, the master and part owner of a vessel agreed to purchase the moiety of his partner, and having paid the purchase money, and received the title deeds, which he deposited as security with a third person, had the entire possession of the vessel given up to him. but his partner afterwards refused to execute a bill of sale or refund the money. It was held, that an action for money had and received, would not lie to recover

the purchase money, as the parties could not be restored to their original situation. VAUGHAN, B., remarked : " The decision in *Hunt vs. Silk,* lays down a very clear and just rule in these cases; if the circumstances be such, that, by rescinding the contract, the rights of neither party are injured, in that case, if one contracting party will not fulfil his part of the engagement, the other may rescind the contract and maintain his action for money had and received, to recover back what he may have paid upon the faith of it." And ALEXANDER, C. B., said : " In order to sustain an action in this form, it is necessary, that the parties should, by the plaintiff recovering the verdict, be placed in the same situation in which they originally were before the contract was entered into. The plaintiff has, by his intermediate occupation, derived the profits of the vessel; if he has not, he might have done so; and it is impossible to say what the defendant might have made, had he, during the time, had any control over it. Under these circumstances it cannot be said, that the situation of the parties has not been altered and that, by the plaintiff's recovery in this action, their original position may be restored." And after remarking upon the situation of the title deeds, as interposing a further obstacle to the placing of the parties *in statu quo,* he concludes by saying : "I think the objection is unanswerable, and that the rule for a non-suit must be made absolute."

Upon the authority of these cases, the Supreme Court of Alabama lay down the rule, in *Barnett vs. Staunton & Pollard,* 2 *Ala. Rep.* 189 : " That a contract cannot be rescinded without mutual consent, when circumstances have been so altered, by part execution, that the parties cannot be put *in statu quo,* for if it be rescinded at all, it must be rescinded *in toto.*"

And Judge COWEN remarks, of the same cases, in *Voorhees vs. Young,* 2 *Hill's Rep.* 298 ; " they certainly prove the general rule very clearly, that, where one party is desirous of rescinding a contract by reason of the other's default, he must do so *in toto,* and cannot hold on to part. He must put the other *in statu quo* by an entire surrender of possession, and of everything he has

OF THE STATE OF ARKANSAS. 239

TERM, 1856.]            Desha's exrs. vs. Robinson adm.

obtained under the contract, or he cannot recover the considera-
tion in an action for money had and received."

The remark of the. chief BARON, above quoted, in reference to
the intermediate occupancy and control of the ship, is pointedly
applicable to the control and direction of the executions which'
the defendant below enjoyed. They, by this intermediate occu-
pation, derived the profits of the writs; if they did not, they might
have done so; and it is impossible to say what the bank might
have made had she, during the time, had the control and direc-
tion of them. Under these circumstances it cannot be said, that
the situation of the parties has not been altered; and that, by the de-
fendant's barring a recovery in this action, their original position
may be restored. Nor could this have been said, if a judgment
had been rendered for the plaintiffs below, for the difference be-
tween $226, and 148 47, with interest; because, besides this be-
ing but damages for a wrong, and not the restoration of a right,
the difficulty as to the intermediate control and direction of the
executions, would have remained as invincible as the recall of
time gone by.

This rule, making the placing of the parties *in statu quo* a pre-
requisite of rescision, is not applied with so much stringency in
cases, where, from the ingredient of *fraud* entering into contracts,
they are made vicious. Indeed, to a certain extent, they are ex-
cepted out of the rule. That is to say, the party not in default,
having a legal right to rescind, springing out of the fraud, "does
not lose this right, because the contract has been partly executed
and the parties cannot be fully restored to their former position."
2 *Parsons on Cont.*, *page* 277. In such cases, where the party,
who has practiced the fraud, has entangled and complicated the
subject of the contract in such a manner as to render it impossible
that he should be restored to his former condition, the party in-
jured, upon restoring, or offering to restore what he has received,
and doing whatever is in his power, to undo what has been done
in the execution of the contract, may rescind it, and recover what
he has advanced. *Masson vs. Bovet*, 1 *Denio Rep.* 69.

This right to rescind, however, arising from the ingredient of fraud in the contract, is not an unqualified one, but "a conditional right," as was said by Chief Justice SHAW, in the case of *Thayer vs. Turner*, 8 *Metc. Rep.* 554. And these conditions are, that within a reasonable time after the fraud comes to light, he must make his election to rescind, (if he designs to do so,) and proceed to rescind by a return or an offer to return whatever he may have received under the contract of any value whatever to either party. *Masson vs. Bovet*, 1 *Denio Rep.* 69; *Barnett vs. Staunton & Pollard*, 2 *Ala. Rep.* 181; *Carter & Hardin vs. Mary Walker*, 2 *Richardson Rep.* 40; *Kimball vs. Cunningham*, 4 *Mass. Rep.* 502; *Baker vs. Robbins*, 2 *Denio Rep.* 136; *Norton vs. Young*, 3 *Mass. Rep.* 29; *Connor vs. Henderson*, 15 *Mass. Rep.* 320; *Perley vs. Balch*, 23 *Pick. Rep.* 283; *Minor vs. Kelly*, 5 *Monroe Rep.* 272; *Steward vs. Daugherty*, 3 *Dana Rep.* 479.

The necessity for this overt action, on the part of the injured party, arises from the double consideration, that the contract is not, *ipso facto*, rendered void by the *fraud*, but voidable merely; and of the duty incumbent upon the injured party to restore whatever he may have received. "A sale made under a false representation, is not, *ipso facto*, void, but is voidable merely, at the election of the party defrauded," says Chief Justice SHAW, in *Thayer vs. Turner.*

"The contract, although fraudulent, was not *ipso facto* void; it was only voidable by a prompt return of whatever had been received upon it," said BEARDSLEY, Judge, in *Baker vs. Robins.*

But when the party elects to rescind and proceeds to do so, he can keep back nothing that he received under the contract, whether it be money, goods or securities. "But if he elects to rescind the sale, he must return and restore to the other party, the whole of the consideration, whether money, goods or securities, received by way of consideration for the sale, which may be of any value to either party," said SHAW, Chief Justice, in *Thayer vs. Turner.* "If, in the exchange, he received money in boot, he ought to return, not only the unsound house, but also, the money

he received," said PARSONS, Chief Justice, in *Kimball vs. Cunningham*.

As an action for money had and received will not lie for the consideration, until the contract has been rescinded, so where fraud has entered into a sale, the purchaser cannot plead it as in disaffirmance of the contract, in bar of an action for the consideration, unless there has been a rescision by a tender, or its equivalent, of the thing purchased, within a reasonable time. *Bain vs. Wilson*, 1 *J. J. Marsh*. 202.

If the thing purchased, is of no value to either party, no tender is necessary. And if by the sickness, or the death, or the destruction of the chattel, a tender is rendered impossible, the actual tender will be excused. *Morehead vs. Gayle*, 2 *Stew. & Port*. 224. And to the same effect are other cases; among them, those of South Carolina, of which, EVANS, Judge, says, in *Carter & Hardin vs. Walker*, 2 *Richardson Rep*. 46: "In all of them it is recognized as settled law, that assumpsit for money had and received will not lie until the contract has been rescinded. This cannot be done without the consent of the seller, unless in those cases where the purchaser has the legal right to rescind, in which he may rescind by a tender back: or, in case this is rendered impossible by the death or destruction of the chattels, he may rescind by notice, without tender. *Fowler vs. Williams*, 2 *Brev*. 304; *Seibles vs. Blackwell*, 1 *McMullen* 56; *Bryant vs. Bostick*, 2 *Mills Rep*. 75; *Wilson vs. Ferguson, Chevis Rep*. 193, as cited by Judge EVANS.

"No defence can be made to an action for the purchase money, when the facts relied upon to make it, would not, if the parties were changed, and the money had been paid, enable the vendee to recover it back." Per HOPKINS, Judge, in *Ogburn vs. Ogburn*, 3 *Porter Rep*. 130.

When, therefore, a party defendant undertakes to make such facts available to him by a special plea instead of relying upon them under the general issue, he must set them out by proper averments in his plea; otherwise it will be bad on demurrer, as

any other plea would be, when the facts of the plea may all be admitted, and yet it does not follow, that the plaintiff has no right to recover. Per McLean, Judge, in *White vs. Howard et al.*, 3 *McLean Rep.* 294.

In the case of *Minor vs. Kelly*, 5 *Monroe Rep.* 273, the defendant plead : " That the slaves, at the time of the sale, were unsound, and affected with consumption, with which, (since the last continuance of the cause,) they had died ; which unsoundness, the plaintiff had fraudulently concealed at the sale, so that the consideration had utterly failed." Upon which, the court, by WILLS, Judge, say : " The second plea was equally bad. If the slaves were unsound at the sale, and that unsoundness was not disclosed, it was necessary to aver that the plaintiff knew of it. Besides, it was indispensable that the defendant, on discovering that unsoundness, if he was defrauded by the concealment thereof, should have disaffirmed the contract, and tendered back the slaves, and to have shown that matter in his plea, or have set up some good excuse for not having done so, by showing that they were too ill to be thus restored, or the like."

To the same point is the case of *Christy vs. Cummins*, 3 *McLean Rep.* 386, where the court say : " This is an action on a note. The defendant pleaded, that the note was given for merchandize, which was represented to be sound, but was unsound and damaged." To this plea, the defendant demurred, on the ground that there was no offer to return the goods.

"A vendee of a chattel cannot rescind the sale without offering to return it, unless it is worthless to both parties." *Perley vs. Balch*, 23 *Pick.* 283. To render a rescision of a contract valid the rescinding party must place the other party *in statu quo*. *Holbrook vs. Burt*, 22 *Pick.* 546; *Conner vs. Henderson*, 15 *Mass.* 319.

"The plea avers: 'that the goods were unsound and damaged so as to be of no value to defendant.' But there is no averment that they were of no value. For the purposes of the defendants, they may have been to them of no value; but it does not appear that,

if returned to the plaintiffs, they would have been of no value to them. The demurrer to the plea is sustained."

Thus, it would seem that, whether the failure of further performance on the part of the bank should be regarded as a mere failure to perform her contract, or, as a failure superinduced by fraud, the plea in question is equally bad, when taken as seeking to interpose a per-emptory bar to the action, predicated either upon a total failure of consideration, or any supposed rescision of the contract.

And it would seem to be unnecessary to scrutinize it further in this aspect, as there could seem to be no plausible pretence, from the facts detailed in the plea, that any right of rescision was secured to the defendant below by any stipulation of the contract; and if any such might be imagined, it would seem that it could not be available, for the reason, that a right of rescision, thus derived, like that which springs to the party not in default, out of fraud, is—like that right—but a right at election and upon condition, to be made available by diligence, or lost by laches, like that right, unless otherwise expressly provided by the stipulations which create it.

The consequence is, that according to what may be called the old " hard shell law," if we consider that this contract was not tainted with fraud, it would have to stand, and the defendants below would have to fulfil it, and seek their remedy in a cross action against the bank, for the recovery of compensation in damages for the failure of further performance on the part of that party to the contract. If, however, we should consider that the contract was, in fact, tainted with fraud, then it could not be made the foundation of a recovery to any extent whatever, but must be disregarded in toto. Both of these doctrines of the old law, however, have been long since exploded, as we have abundantly seen, as to the latter, by the authorities already cited, (see, also, remark on this particular point in Wheat vs. Dotson, p. 704;) and as to the former, by the practical common sense of more modern times, with an idea, german to that kind of sense,

that it would be as absurd to yield to "straight jacket" pleading, the power to "crush out" common justice and common convenience, for the mere sake of the preservation of the beauty and harmony of that science, as it would be to yield to the commander of the outworks of a citadel, the power to turn in upon it the guns fixed upon those works to guard its approaches.

The same general proposition, which we consider that we have now laid down and sustained upon this rather extended examination of the plea before us, is far more briefly expressed by Mr. Chitty, in the following extract from his work on contracts, *page* 703.

"A contract cannot, in general, be rescinded *in toto*, by one of the parties, where both of them cannot be placed in the identical situation which they occupied, and cannot stand upon the same terms as those which existed when the contract was made. The most obvious instance of this rule is, where one party, by having had possession, &c., has received a partial benefit from the contract. It would be unjust to destroy a contract *in toto*, where one party has derived some advantage by the other having, to some extent, performed the agreement; in such cases the agreement shall stand; the defendant must perform his part thereof, and seek in a cross action a compensation in damages for the plaintiff's default. Of late, however, the courts, to prevent unnecessary litigation, have, in many instances, allowed a defendant, in case of a partial failure of consideration, * * * * instead of bringing a cross action, to reduce the damages by setting up such partial failure of consideration."

And this, we think, was precisely what the learned pleaders designed to set up by their plea in the case before us; and which they had a clear right to do, and insist upon as in mitigation, or reduction of the amount of the recovery sought upon the contract, on which the action is based; not only in accordance with what is now a great current of decisions in the English, the Federal, and in several of the State courts—daily increasing in volume and force, and covering deeper and deeper below the sur-

face, the now obsolete doctrines of the old law, to which we have alluded—but, also, with like doctrines distinctly declared in this court heretofore, and administered in the cases of *Wheat et al. vs. Dotson*, 7 *Eng. Rep.* 699; *Smith vs. Capers*, 13 *Ark. Rep.* 9, and *Robinson vs. Mace*, 16 *Ark. Rep.* 97.

In these cases, this court, recognizing the doctrines of the law thus administered under the name of recoupment, received that term and the doctrine it expresses, in the modern signification and acceptance of both: wherein it is understood, that the matter which is to be the foundation of the mitigation or diminution of the plaintiff's recovery, to be within the doctrine, must arise out of the transaction, only, in which the suit is founded, and cannot come out of a different contract. But when this is the case, it is immaterial whether this cross demand, (in the nature of a cross action,) is liquidated, or is unliquidated. Nor is the defendant necessarily bound to recoup; if he thinks proper, he may not do so, but may bring his cross action. But, of course, if he should elect to recoup, it would bar the cross action. *McLane vs. Miller*, 12 *Ala. Rep.* 643. The general principle, then, under which recoupment in this sense is allowed, is that, where one brings an action for a breach of contract between him and the defendant, and the latter can show that some stipulation in the same contract was made by the plaintiff, which he has violated, then the defendant may, if he choose, instead of bringing a cross action, recoup his damages arising from the breach committed by the plaintiff, whether these damages be liquidated or not. The idea being that all cross claims arising out of the same contract, shall compensate each other, and the balance only be recoverable by the plaintiffs.

This is a material modification of the original common law idea of recoupment, if that is to be inferred solely from the few ancient traces of it remaining in the old books. It is by no means certain, however, that these traces of it present fairly its true character; but they at least vindicate it, as a genuine common law doctrine.

Warred against, by Lord COKE, doubtless, because of its equitable texture, in his common warfare against equity law, so ably vindicated by BACON, his great rival, to the continued annoyance of the former, and a stumbling block to the special pleaders; it is not at all remarkable that it should have been driven away, for a time, from the common law courts, or that the lineaments of its features should be found imperfectly traced, when the practical good sense of modern times, in recovering its equilibrium on this subject, had gotten the better of both.

Mr. SEDGWICK, in his work on *Damages*, after entering upon this subject, evidently with a wry face and a disposition to cavil, concludes, at last, after examining most of the cases then accessible to him, (July 1852:) "I cannot here omit to say, that the doctrine of recoupment, as generally adopted in the United States, appears to me settled on just and philosophical principles, while, at the same time, there is no doubt, it works a serious innovation in the ancient rules which seek to produce singleness of issues. Those rules are, however, so far modified by the practice of double pleading, sett-off, and lastly of recoupment, that it becomes a grave question, whether they are now of any very considerable practical value; and it is, at least, quite doubtful, whether the forms of action are of any great utility, so far as they are supposed, or were originally intended to produce singleness of issue." *Sedgwick on Dam.*, 2d ed., p. 452.

According to these doctrines, there can be no doubt but that, in all that class of cases commonly called partial failure of consideration, whether involving bad faith or not, or where fraud has intervened, whether in the obtaining, or in the performance of contracts, or there has been a breach of warranty, fraudulent or not, or of any other stipulation of the contract sued upon, entitling the defendant to a cross action against the plaintiff to recover damages for such failure, fraud or breach, he may, if he elects to do so, instead of resorting to such cross action, plead the matter by special sworn plea, under the provisions of our statute, or if, upon a verbal contract, plead the general issue, and

give notice of the matter relied upon, and claim a reduction of the amount the plaintiff would otherwise recover, corresponding with the injury he has sustained.    Besides the cases cited in the case of *Wheat et al. vs. Dotson*, there are a number of other cases to the same general effect, collected by Mr. SEDGWICK, in his chapter on recoupment; and a number of others are to be found in the current reports, out since the publication of the second edition of that work, which we deem it unnecessary to collect and cite, in order to decide upon the sufficiency of the plea in this case, as a plea of recoupment.    The case of *Hatchett & Brother vs. Gibson*, 13 *Ala. Rep.* 587, may be mentioned, however, where a very learned and elaborate opinion of the Alabama court (collecting the cases up to that time,) was delivered by the late Chief Justice COLLIER, who, eighteen years before, delivered the opinion of that court, in the case of *Pedan vs. Moore*, (1 *Stew. & Port*, 71,) which has ever since been a leading one, and has been cited with approbation, both in the Supreme Court at Washington, and in several of the State courts.    In this latter case (*of Hatchett & Bro. vs. Gibson*,) that court adopt the doctrine of recoupment by *that name* and apply it to the case, which was, that "Pursuant to a contract between the plaintiff and defendant, the latter deposited his cotton in the ware-house of the former, where it was destroyed by fire.    The former having brought an action against the latter, to recover for advances made on the deposit of the cotton—held that, "if the defendant could recover damages from the plaintiff for the loss sustained in the destruction of the cotton, he could *recoup* such damages in this action."

In the case of *Wheat et al. vs. Dotson*, in this court, we applied the doctrine to a partial failure in quantity, where the subject of the sale was real estate, and held that it would also apply if the failure was in the quality of the estate, but would not apply if the failure related to the title of the estate.    The case of *Smith vs. Capers*, 13 *Ark. Rep.* 9, which was, that to an action on a note, defendant pleaded that the consideration for the note was certain lots and the improvements thereon, and that the

payee would add certain other improvements, which he failed to do, was also held by this court to be within the doctrine.

And so, also, in the case of *Robinson vs. Mace*, 16 *Ark. Rep.* 97, which was, that "where a party enters into a contract to make and burn brick, he will be held to skill and diligence in the execution of his undertaking, and upon failure to make and burn the brick in a workmanlike manner, the damages may be recouped in an action by him for the value of the work and labor."

As to the matter set up in the plea before us, it was held by the court, in the case of *Clark adx. vs. Moss et al.*, 6 *Eng. Rep.* 736, that a judgment may be transferred by *parol*, so as to confer upon the transferee the equitable right to control its collection, to use the name of the plaintiff in the judgment for that purpose, and to receive the money when collected: and to the same effect is the case of *Wier & Miller vs. Pennington et al.*, *Ib.* 745, with the addition that, "no greater right can be conferred by a *written* assignment, because judgments are not within the provisions of the statute of assignments."

It would seem to be clear, therefore, that upon the interference of the bank, set up in the plea, the defendants below might have had redress by a specific performance upon a proper application to the courts; or could have brought an action against the bank for damages, for the breach of the contract on her part; but they were not compelled to take either remedy. But, having the right to a cross action upon this breach, on the part of the bank, of the contract sued upon, they thereby acquired the right, under the influence of the doctrines we have been considering, to set up that matter in their plea, as they have done, and insist upon it, as in the nature of a cross action for damages for that breach, and recoup the amount of such damages, when ascertained, in diminution of what the plaintiffs below would have been otherwise authorized to recover. The amount of such damages, the jury, of course, would have to ascertain from the proofs, precisely as if a cross action, in form, had been brought to recover damages for

this breach of the contract; and if found by them to be *less in amount* than what they would have otherwise found for the plaintiff below, then deduct the one amount from the other, and find their verdict in favor of the plaintiff below, for the balance thus ascertained. If, however, these damages should be found of equal amount to what the plaintiff would have been otherwise entitled to recover, then they would find their verdict for the defendant below.

It but remains for us to say, that in the light of these views, we hold the plea good, as one setting up matter for recoupment; and it was, therefore, such a one as required a reply from the plaintiffs below.

Although the plaintiffs below could have taken a default for so much of the declaration as was not answered by the plea, *to wit:* for the sum of the difference between the $148 47 paid out, and that of $226 received, subject to the final judgment upon the whole case; that is not an error for which this case should be reversed, because it was his own laches that he did not do so. The judgment of the court will, therefore, be affirmed with costs.

Mr. Justice HANLY: In 1848, the executors of Denton impleaded William Robinson in debt, on a note made by himself and others, to the late Real Estate Bank of the State of Arkansas, which had been regularly transferred to the testator by assignment. The defendant, William Robinson, died, and the cause was revived against his executors, who filed several pleas in bar, on part of which, issues were taken, and the remaining ones stricken out. The executors of William Robinson also died, and the suit was revived against the appellee as administrator *de bonis non.* The appellee, on leave of the court, filed an amended or substituted plea of failure of consideration, after he was made party thereto, alleging substantially therein, that at, or before the 8th July, 1841, the Real Estate Bank, the original payee in the note sued on, caused an execution to be issued on a judg-

17c

ment, which she had before that time obtained against John Robinson and Rufus Stone, rendered in the Pulaski Circuit Court, on the 14th November, 1840, on a note for $800, in which they were bound as sureties for one Dunbar, which execution was in the hands of the sheriff of Jackson county, *to wit:* on the 8th July, 1841, where Stone and John Robinson, the defendants therein, were then residing, for the purpose of collection from them, and that the appellee's testator, prior to said 8th July, signed a note in blank, to the said Real Estate Bank, which is the same sued on, which said note was filled up with the sum of $800, and delivered to the bank, and at the same time the sum of $148 47 in cash, by way of interest on said execution debt, was likewise paid, and, in consideration thereof, the said bank transferred to the appellee's testator, and one Nathan Haggard, in parol, the control and direction of the said execution, and to control and direct such further executions, and the issuance and use thereof upon such judgment, until the same should be fully paid off and satisfied according to law: that said execution, then in the hands of the sheriff, was returned unsatisfied, except as to the sum of $226 made out of John Robinson, and that, on the 8th July, 1842, another execution was issued to the same sheriff, returnable to the March term, 1843, of the same court, and after it had been in, and come to the hands of the said sheriff, but before any money had been made on the same, the bank, disregarding her said contract, so transferring the control of such execution, *took control* of said last mentioned execution, and withdrew the same away from the testator of the said appellee, and the said Haggard, and through the said appellant's testator, their agent in that behalf, directed the said sheriff of Jackson county, to return said execution without further proceeding thereunder, which he did on the 14th November, 1842, wholly unsatisfied as for said balance, as against the will, express or implied, of the said Haggard, and the testator of appellee, to whom the control thereof had been so transferred, &c.; averring that, in consideration of the premises, the whole of the consideration had failed.

To this plea the appellants demurred, upon the ground, that it did not detail such a state of facts as to show a failure of consideration, but merely an illegal act of the sheriff, and of the bank, temporarily delaying the collection, and that the alleged failure was a mere deduction of law as alleged, without facts for its foundation, &c. And because, after such transfer of the judgment and execution, the control of the bank over the same ceased, and the control thereof was absolutely vested in Haggard and appellee's testator, &c., &c.

But the court overruled the demurrer to the said plea, and the appellants resting thereon, final judgment was rendered against them, from which the appellants appealed to this court, and have filed herein their assignment setting up the above causes, among others, why such judgment should be reversed by this court.

It is insisted by the appellants, that the arrangement made by the bank and Haggard and the testator of the appellee, in respect to the control of the execution and judgment in favor of the bank against John Robinson and Rufus Stone, was, in law and equity, an assignment of both judgment and execution, so as to divest the bank or her agent of all power or authority to control them further, and various authorities and adjudications are cited in support of this position. We have given the authorities and adjudications referred to by the counsel for the appellants, the most careful and patient examination, and do not think they will be found to sustain their position further than this: that such negotiations, as the one set out in the plea, are so far protected and respected by courts of law, after notice to the judgment or execution debtor, as not to allow or permit him to suffer the equitable assignor to deal with him, in respect to the debt or chose in action, thus equitably assigned or transferred, so as to prejudice or molest the interests of the assignee thereunder; and we think this is the correct doctrine, and that it will not be found that the authorities to which this court has been referred, will go beyond this. Let us examine the plea of the appellee, and see what is the purport of the matter relied on in this cause. The bar set

up in the plea, is, that the bank, the original payee of the note, was the owner of the execution and judgment against John. Robinson and Rufus Stone for $800, and the interest and costs due thereon, and agreed with the testator of appellant and Haggard, for the note in suit, and the sum of $148 47 in cash, that they might have, use and control both execution and judgment, until the full amount thereof should be made and recovered to them: but, that after the execution of the note in question, and the payment in cash, the bank, in utter disregard of her contract so made, took from Haggard and the testator of appellee, all control of the execution, and had it returned unsatisfied by the sheriff of Jackson county, in whose hands it had been caused to be placed by those whom we have holden to have been the equitable assignees thereof. There can be no doubt, if the testator of the appellee and Haggard had elected to enforce their contract with the bank, specifically, instead of considering it at an end, as they seem to have done by their pleading in this cause, that by appealing to a court of law or a court of equity, their rights would have been protected and enforced, both as to the execution debtor and the bank, under which they claim. But we know of no principle of law which would require them to take this course. As soon as the terms of the contract were violated by the bank, they had a perfect right to treat it as dissolved, and if the consideration inducing it had been absolutely paid, to have brought debt or assumpsit for its recovery, and if not paid, but remaining, as in this instance, to set up a failure of consideration, as is done by the plea now being considered. See *Walworth vs. Pool*, 4 *Eng. Rep.* 395; *Prince, Chase & Co. vs. Thomas*, 15 *Ark. Rep.* 380; *Lafferty vs. Day, Williams & Co.*, 2 *Eng. Rep.* 258; *Comyn on Cont.* 38, 322; *Dutch vs. Warren*, cited by Lord MANSFIELD, in 2 *Burr.* 1010.

As we have said, in case of the breach of the contract made by appellee's testator and Haggard, with the bank, in respect to the execution and judgment against John Robinson and Rufus Stone, they had the alternative, to treat the contract at an end, as

it seems they did, or to appeal to a court of law or equity, to have their rights protected thereunder. A court of chancery would have, doubtlessly, given them relief by compelling a specific performance of the contract, and enjoining and restraining the bank from further intermeddling with their rights, touching the subject matter of the contract; for, as far as Haggard and appellee's testator were concerned, the contract was executed; but, in respect to the bank, it was *in fieri*, or in process of exeecution, both as to its *consideration* and its *substance*.

The appellants might have noted the default of the appellee for so much of the demand claimed by the declaration, as was not answered by the plea, and taken judgment final for that amount, when he refused to answer over upon the overruling his demurrer, But not having done so, it was his own laches, and judgment will not be reversed on that account.

We are, therefore, clearly of the opinion, that the Circuit Court of Independence did not err in overruling the demurrer of the appellants to the plea of the appellee; and, we, therefore, affirm the final judgment of that court rendered for the appellee, on the refusal of the appellants to answer over, on the overruling said demurrer.