McKINNEY v. JONES.

4-8030                                     198 S. W. 2d 415

Opinion delivered December 16, 1946.

Rehearing denied January 20, 1947.

*Bon McCourtney* and *Claude B. Brinton*, for appellant.

*Jay M. Rowland,* for appellee.

ED. F. McFADDIN, Justice. Appellant was plaintiff in the trial court, and brings this appeal from a jury verdict and consequent judgment in favor of appellee, who was the defendant. We will refer to the parties as they were styled in the trial court.

The defendant was operating a grocery store and meat market in Hot Springs in a building rented at $35 per month from a Mrs. Evans. One Thursday afternoon in September, 1945, plaintiff went to the defendant's store, and—after a brief negotiation—agreed to pay the defendant $4,000 for the fixtures and the entire stock of groceries and meats. In the course of the negotiation

plaintiff went to see the owner of the building about a rental agreement. She promised to give him her answer the next day. Without waiting for such answer, plaintiff returned to the defendant's place of business, and paid the defendant $400 as "down payment" on the $4,000 purchase price. It was agreed that the defendant would continue to operate the business until (a) the balance of $3,600 had been paid, and (b) certain licenses could be transferred from defendant to plaintiff. It is important to note that the defendant remained in charge of the business.

On the next day (Friday) the owner of the building advised the plaintiff that the rent would be $60 per month. Then Saturday the plaintiff's son examined the store, and advised the plaintiff that he could not successfully operate the business. Immediately the plaintiff informed the defendant that the trade was cancelled, and demanded a return of the $400 payment, which the defendant promptly refused to pay. Plaintiff then left the store; and a few months later filed this action, seeking to recover the $400 down payment, on the contention that the plaintiff and defendant had entirely rescinded the original contract by mutual consent, and that restitution of the $400 should follow as a matter of course. The defendant not only denied that there was any mutual rescission, but also claimed that the $400 down payment had been agreed to be earnest money, and by way of forfeit, and that when plaintiff elected to abandon the contract, then the $400 belonged to the defendant.

At the trial the plaintiff offered no proof of any fraud or misrepresentation, and did not claim that the defendant was in any wise at fault. Plaintiff admitted that he was the one who sought to rescind. His sole hope of recovery lies in (1) proving a mutual rescission, and (2) establishing the principle that restitution automatically must follow mutual rescission. Thus, the plaintiff's situation in the case at bar is distinctly different from the Arkansas cases on rescission, some of which are: *Desha's Executors* v. *Robinson,* 17 Ark. 228; *Bellows* v.

*Cheek,* 20 Ark. 424; *Ft. Smith Lbr. Co.* v. *Baker,* 123 Ark. 275, 185 S. W. 277; *Sanford* v. *Smith,* 163 Ark. 583, 260 S. W. 435; *Rhodes* v. *Survant,* 209 Ark. 742, 192 S. W. 2d 880.

The trial court refused to give the plaintiff's requested instruction, which reads as follows: "You are instructed by the Court that if you find from the evidence there was a rescission of the contract by mutual agreement, and that the plaintiff put the defendant in possession of all property received from the defendant by reason of the contract, then you will find for the plaintiff in the sum of four hundred dollars, the amount paid to the defendant upon the purchase price of the property."

The refusal to give this instruction is assigned as reversible error; but we cannot agree with the plaintiff, because the refused instruction is contained in another instruction given by the court without any objection from either side. The instruction given by the court embraced the theories of both sides. We copy the instruction, and italicize the part covering the plaintiff's refused instruction:

"The question for the jury to determine in this case is whether the plaintiff is entitled to recover back the sum of four hundred dollars, or any part thereof, made as a payment on the merchandise purchased from the defendant. The plaintiff contends that this payment was made as a part of the payment of the purchase price for the merchandise purchased from the defendant, and that, thereafter, the plaintiff and defendant, agreed upon a rescission of the contract, and the plaintiff claims that by virtue thereof, he is entitled to recover back the sum of four hundred dollars made as a payment on the merchandise.

"The defendant claims that the sum of four hundred dollars, while made as a part payment of the purchase price of said merchandise, was also intended, and was paid, as a forfeiture to insure the performance and completion of said contract on the part of the plaintiff, and that it was understood that if the plaintiff failed to carry

out the contract for the purchase of said merchandise, that the sum of four hundred dollars paid thereon would be forfeited to the defendant.

"The burden of proof is on the plaintiff to show by a preponderance or greater weight of the testimony that he is entitled to recover the sum paid by him to the defendant by virtue of their contract. *If the jury believe from a preponderance or greater weight of the evidence that the sum of four hundred dollars was paid by the plaintiff to the defendant as a part of the payment of the purchase price of said merchandise, and that thereafter the plaintiff and defendant agreed upon a rescission of said contract whereby the defendant agreed to, and did, accept back the merchandise purchased from him by the plaintiff, then the plaintiff would be entitled to recover the sum of four hundred dollars as claimed by him in action.* If the jury believe, however, that the sum of four hundred dollars was paid to the defendant by the plaintiff and was to be considered not only as a part payment of the purchase price of said merchandise, but also to be considered as a forfeiture in the event that the plaintiff should fail to carry out his contract as agreed upon, and you further find from a preponderance of the evidence that through no fault of the defendant the plaintiff failed, neglected and refused to carry out his contract as agreed upon, then the plaintiff would not be entitled to recover."

The rule is well established that the refusal of a correct instruction is not error, when such instruction is substantially included in those given. Literally scores of cases to sustain this rule are collected in West's Arkansas Digest, "Trial," § 260. The fact, that the plaintiff's requested instruction was covered in the court's instruction, seems clear.

Counsel for plaintiff have furnished us a most carefully prepared brief to support the statement, that where there is mutual rescission, then there must be restitution to put the parties in *statu quo ante*. There are authorities which recognize this statement in general language. *Gibula* v. *Sause,* 173 Md. 87, 194 At. 826; Black on Rescis-

sion and Cancellation, 2d Ed., §§ 526 and 535; 66 C. J. 733; 27 R. C. L. 641; and annotation in 59 A. L. R. 215, *et seq.*

But there are also authorities to the effect that, in the event of mutual rescission, restitution is a matter of contract. Black on Rescission and Cancellation, 2d Ed., § 535, discusses this point; and in the American Law Institute's Restatement of the Law of Contracts, § 409, there is this statement as to whether rescission includes a promise of restitution:

"It is a question of interpretation whether on rescission of a bilateral contract partly performed on one or both sides, the parties agree not only to forego future performance, but to make restitution by returning payments that have been made, or by paying for performance that has been rendered.

"*Comment*: a. There is no rule of law establishing a presumption either that restitution shall be made or shall not be made when an earlier contract is rescinded. The question is to be determined on the facts of each case."

In 13 C. J. 603, in speaking of the effect of rescission, the text reads: "Ordinarily any claim in respect of performance and of what has been paid or received on the contract will be referred to the agreement of rescission, where the contract is rescinded while in the course of performance, and as a general rule no such claim may be made unless it has been expressly or impliedly reserved; . . ."

However interesting may be this question of restitution after mutual rescission, it is entirely academic in this case; because the trial court in its instruction as previously copied, fully covered the plaintiff's requested instruction, even if such requested instruction stated the correct rule of law—which question we do not decide. There was ample evidence to support the jury verdict, and the judgment is affirmed.