POLK *v.* GRAY.

4-8048                                   198 S. W. 2d 847
Opinion delivered January 27, 1947.

*J. F. Quillin,* for appellant.

*J. M. Smallwood* and *D. P. McKenzie,* for appellee.

GRIFFIN SMITH, Chief Justice. Questions presented are whether the Court erred in refusing to decree specific performance of a contract for sale and purchase of land; or in the alternative was it error to dismiss the plaintiff's prayer for damages, and to award liquidated damages to one of the defendants.

S. A. Gray, who owned 79 acres, listed it with United Farm Agency to be sold for $2,500. The Agency was represented by H. H. Vance.

June 14, 1944, Harrison Polk signed the Agency's printed form whereby he contracted to purchase the land and the seller agreed to execute a deed "containing a general warranty and the usual further covenants for the conveying and assuring to [the purchaser] the fee simple of the said premises, free from all encumbrances except those mentioned herein".

A cash payment of $250 was made, with $2,250 to be paid at one o'clock July 14th at the Agency office in Paris. The sale was subject to a coal lease held by W. H. Argo.

The evidence is not in substantial conflict except that part regarding possession. This, however, seems to have been restricted to Polk's use for pasturage, a right granted by Tom Stewart, who had the property rented. Gray seemingly told Polk he could graze his

cattle on a minor part of the acreage, provided Stewart did not object. Stewart agreed on condition that his crops were not to be injured. The testimony is undisputed that the cattle gave trouble, and "in about a month" they were removed at Stewart's request.

During trial it was stipulated that Vance was not liable unless it be for the cash deposit of $250, and this was tendered and paid into the Court registry.

Abstract of title was delivered to W. L. Kincannon, an attorney at Booneville, who addressed a letter to Nesto Regindtto, (referred to in one of the briefs as Reginato) stating that the title was good if certain conditions were met—among them being procurement of quitclaim deeds from four persons whose interests as joint heirs had been acquired by E. H. Avance. Arguing the proposition that in spite of these objections by counsel in examining the abstract, title was good in Gray because he had been in adverse possession a sufficient length of time for title to ripen, appellee contends that the partition suit pointed to by Kincannon as faulty occurred thirty-five years ago. One quitclaim deed was procured, but others were not.

It is quite clear that by mutual conduct time for closing the deal was extended beyond July 14th; and there is testimony to this effect. Gray and his wife, who executed a deed and tendered it to Polk, returned from a trip to California August 15, 1944. Gray immediately undertook to procure the required quitclaim deeds, but was unable to do so. Later Afton Mitchell offered $2,500 for the land. In the meantime Gray says he met Polk and told him he had done all he could, and that the "deal was off". Mitchell paid $2,000 in cash and withheld $500 until the argument with Polk could be disposed of. He claims to be an innocent purchaser.

After Mitchell completed his purchase, Polk offered to waive the conditions Kincannon had mentioned in the title letter. This was emphasized during trial, when Polk said that if Mitchell were willing to risk his money on the title, he was likewise willing.

The trouble is that Polk persistently contended the title was. not merchantable; that under his contract he had a right to insist upon all of the conditions mentioned by Kincannon, and he refused to accept the deed until informed that the property had been disposed of.

The evidence as abstracted does not conclusively nor by resulting implication show that the title was bad. Mitchell took one view of it, Polk another until the land was sold; then he expressed a willingness to pay the balance of $2,250. In these circumstances we think the Chancellor was warranted in finding that Polk did not act in good faith. It was not stated in the contract of sale that title should be good, *prima facie*. The obligation was that a warranty deed would be executed, assuring a fee simple title free from encumbrances except those enumerated. If, as appellee says in his brief (and we assume there is unabstracted testimony supporting the statement, since it is not contradicted by appellant,) Gray had been in adverse possession for thirty-five years since the partition suit in respect to which quitclaim deeds were suggested by Kincannon, it can hardly be said that want of such deeds deprived the title of its merchantable character.

The decree finds that Gray is entitled to the cash payment of $250, but directs that the fund be held until this Court has disposed of the appeal. The contract and testimony as to subsequent transactions are not harmonious. The contract mentions a consideration of $2,500 as purchase price of the land, " . . . and [to] pay the same as follows: Amount paid on execution of this contract, $250; additional cash on delivery of deed, $2,250". Farther there is this paragraph: "[If] either party fails . . . to perform his part of this agreement, he shall forthwith . . . forfeit as liquidated damages . . . a sum equal to ten percent of the agreed price of sale".

While liquidated damages are stipulated, the payment of $250 is a part of the purchase price. Later, and in the oral testimony or depositions, the deposit is spoken of as a trust fund. Vance testified: "The down pay-

ment was what we call trust money. I tendered that back to Mr. Polk and he would not accept it. The money is in the bank and I will give him a check for it today. . . . Mr. Gray did not receive [the $250]''.

It is our view that, in the circumstances attending the case, the item of $250 was, in fact, a guaranty fund against capricious conduct upon the part of the proposing purchaser, and the specific deposit was not absolutely and in all events to be treated as liquidated damages. While Polk may have refused to accept a merchantable title and to pay the balance of $2,250, he at least was acting on the advice of an attorney who did not feel that unqualified approval could be given. It seems certain that additional time was granted by common consent. Gray's act in procuring one of the four quitclaim deeds no doubt influenced Polk in believing the others were necessary; nor was there an unwillingness to refund the initial payment.

The decree will be reversed in so far as it requires payment to Gray of $250; with directions that this sum be refunded to Polk. That part of the decree denying specific performance is affirmed. Costs in each court are to be borne equally by Polk and Gray.