BAKER *v.* TAYLOR & COMPANY.

4-9413                                      237 S. W. 2d 471

Opinion delivered March 19, 1951.

*U. J. Cone,* for appellant.

*A. F. Triplett* and *Coleman, Gantt & Ramsay,* for appellee.

ED. F. McFADDIN, Justice. This appeal results from the unsuccessful effort of appellants to recover a deposit made on a land purchase contract.

The real estate of Arthur McCoy was owned by his heirs in eight equal shares: seven shares being owned by his seven surviving adult children, and one share by his two minor grandchildren, whose guardian is The Simmons National Bank. The McCoy heirs listed the lands for sale with Taylor & Company, a real estate agency, hereinafter called "Taylor". On June 15, 1949, appellants (Cone C. Baker and Maye Baker, his wife) executed a written instrument, offering to pay $7,500 for "the McCoy place, on the Little Rock highway"; and two days later deposited with Taylor the sum of $500 as down payment on the purchase price, and received a receipt:

"Received of Cone C. Baker and Maye E. Baker—Five hundred and 00/100—Dollars Cash deposit on McCoy Place on Hgw. No. 65. Sale price $7,500. To include split fence posts, sawed fence posts, hot water heater and furnishing a clear title to the purchaser within 60 days. Subject to owners' acceptance.

TAYLOR & CO."

Appellants were advised by Taylor that the offer of purchase had been accepted, that the deed was being sent to the heirs for signature, and that authority was being obtained from the Probate Court to convey the interest of the minors. Appellants advised Taylor how they desired to be named as grantees in the deed; and also the appellants had the garden plowed, peas planted, the yard mowed, the fences repaired, and the property otherwise improved. Notwithstanding all these matters, appellants, on July 11, 1949, wrote Taylor:

"Due to a number of considerations, it is best for us to fore-go the proposed purchase of the McCoy place, the fence posts and hot water heater as mentioned in your memo concerning such proposed sale.

"We have to ask that you return the deposit of $500."

On October 3, 1949, appellants filed action at law against Taylor to recover the $500 deposit. For defense,

Taylor (a) stated that the money was held by it as a mere stakeholder, (b) moved transfer of the case to equity, and (c) interpleaded the fund as between the appellants and the McCoy heirs. (See § 27-817, Ark. Stats.). The transfer to equity was granted, and the cause was heard with the appellants and the McCoy heirs as the opposing parties.

In addition to the facts already recited, the evidence showed: that the McCoy heirs had authorized Taylor to accept the appellants' offer; that such acceptance had been promptly communicated to appellants; that the deed had been executed by some of the adult heirs and was en route to the others; that the guardian of the minors had taken proper steps to obtain Probate Court authority to convey the interest of the minors; that the abstract had been prepared and tendered to appellants; and that the change of mind by appellants was caused by no fault or delay on the part of the McCoy heirs, or Taylor, but rather because the appellants found another place which they preferred over the McCoy place. From a decree awarding the $500 to the McCoy heirs, the appellants bring this appeal.

The facts in the case at bar clearly distinguish it from such cases as *McKinney* v. *Jones,* 210 Ark. 912, 198 S. W. 2d 415; *Polk* v. *Gray,* 211 Ark. 24, 198 S. W. 2d 847; *Gowen* v. *Sullins,* 212 Ark. 824, 208 S. W. 2d 450; and *Hall* v. *Weeks,* 214 Ark. 703, 217 S. W. 2d 828. Here the amount deposited was relatively small as compared with the total price to be paid; the vendees attempted to rescind within twenty-eight days after signing the contract, although the vendors had sixty days to complete the title and transfer; there was no failure or refusal of the vendors to perform; they could have performed within the time allowed; there was no mutuality of rescission; and the contract gave the vendees no right to rescind.

Appellants cannot rely on the Statute of Frauds:[1] (a) the written instrument of June 15th was signed by them as "the party to be charged" within our holding

---

[1] See § 38-101, Ark. Stats.

in *Jones* v. *School Dist.*, 137 Ark. 414, 208 S. W. 798; (b) the description of the property was sufficient to furnish the key for its location within our holding in *Rawls* v. *Free*, 184 Ark. 737, 43 S. W. 2d 540; and (c) the appellants took possession of the lands and made improvements. The verbal acceptance of the appellants' offer was sufficient to bind them, for in *Jones* v. *School Dist.*, 137 Ark. 414, 208 S. W. 798, Mr. Justice HART said:

" . . . Our court has adopted the rule that a verbal acceptance of a written offer to sell land is sufficient to constitute a binding agreement on which to charge the person by whom the memorandum is signed. If the memorandum is otherwise sufficient when it is assented to by the purchaser, the contract is consummated by the meeting of the minds of the two parties, and the evidence to make it valid is supplied by the signature of the parties sought to be charged. . . . "

While we do not find in the cases of this Court one which contains facts like those in the case at bar—in which the vendees, notwithstanding their default, seek to recover the amount paid under an executory contract for sale of land—nevertheless there are cases from other jurisdictions enunciating principles which are adverse to vendees similarly situated.[2] We quote from some of the cases:

A — In *Hansbrough* v. *Peck*, 5 Wall. (U. S.) 497, 18 L. Ed. 520, the Supreme Court of the United States said:

" . . . And no rule in respect to the contract is better settled than this: that the party who has advanced money, or done an act in part performance of the agreement, and then stops short and refuses to proceed to its ultimate conclusion, the other party being ready and willing to proceed and fulfill all his stipulations according to the contract, will not be permitted to recover back what has thus been advanced or done. . . . "

[2] For cases other than those here quoted, see Annotations, "Vendee's right to recover amount paid under executory contract for sale of land," in 59 A. L. R. 189, 102 A. L. R. 852, and 134 A. L. R. 1064. See, also, American Law Institute's Restatement of the Law of Contracts, § 355 (4) and also § 357.

B — In *Baston* v. *Clifford,* 68 Ill. 67, 18 Am. Rep. 547, the Supreme Court of Illinois said:

" . . . where the vendor is in no default, and is ready and willing to perform the contract on his part, the vendee cannot recover back money paid by him on the contract. . . . "

C — In *Ketchum* v. *Evertson,* 13 Johns. (N. Y.) 359, 7 Am. Dec. 384, the New York Court said:

" . . . It may be asserted with confidence, that a party who has advanced money, or done an act in part performance of an agreement, and then stops short, and refuses to proceed to the ultimate conclusion of the agreement, the other party being ready and willing to proceed and fulfill all his stipulations according to the contract, has never been suffered to recover for what has been thus advanced or done. . . . It would be an alarming doctrine to hold, that the plaintiffs might violate the contract; and, because they chose to do so, make their own infraction of the agreement the basis of an action for money had and received. Every man who makes a bad bargain, and has advanced money upon it, would have the same right to recover it back that the plaintiffs have."

The principles expressed in the quoted cases are sound, and we apply them to the case at bar. The decree of the Chancery Court is affirmed.