Barnett v. Stanton & Pollard.

---

## BARNETT v. STANTON & POLLARD.

1. To entitle the vendee to recover for a defect in the quality or soundness of the property sold, except under special circumstances, he must shew either a warranty, or that the seller concealed, or fraudulently represented, its qualities.

2. No form of words is necessary to constitute a warranty. A bare representation or assertion, if so *intended and understood* by the parties, will amount to a warranty; but, though the representation of the seller be positive, it will be regarded as an expression of his belief or opinion, unless it was *intended and received* as a stipulation, that the quality of the property was such as it was represented.

Barnett v. Stanton & Pollard.

3. *Quere*—on the sale of an article of merchandize, will the law imply a warranty, that it is merchantable, or fit for the purpose for which it was sold and purchased? *Semble*—that such a warranty has never been implied, where the article was open to the inspection of the vendee before the purchase.

4. Fraud will not be implied from the mere falsity of a representation—it is necessary to shew, that the representation was made with a knowledge by the vendor, that it was untrue, or under circumstances manifesting a recklessness of truth, without knowing whether it was true or false.

5. The mere omission of the seller to disclose a fact within his knowledge, which would materially affect the value of the article, is not a fraud upon the vendee—to make it such, there should be a fraudulent suppression.

6. An offer to return in a reasonable time after the breach of a warranty by the vendor, or the discovery of a fraud practised by him on the vendee, will be as effectual to rescind the contract, as if the offer had been accepted.

7. A vendee, who would rescind a contract for breach of warranty or fraud, must act with promptness, and take the legal steps for that purpose, as soon as the breach or fraud is discovered. If the vendor resides at a distance from the vendee, an offer to return a chattel, may be made through the medium of the *post-office*.

8. A contract cannot be rescinded, without mutual consent, where circumstances have been so altered by a past execution, that the parties cannot be put *in statu quo*.

9. Where the vendee does not rescind the contract upon the discovery that the vendor has committed a fraud, he cannot avoid the payment of the purchase money, *in toto*—the deduction, if any, can only be to the extent of the injury which the vendee has sustained by the fraud.

THE plaintiff brought an action of *Assumpsit* against the defendants in the Circuit Court of Mobile, on a promissory note, dated the 31st January, 1838, for the payment of thirteen hundred and thirty and thirty-five one-hundredths dollars, six months thereafter. In the transcript there is no plea, but the case was tried by the jury as on issue joined.

On the trial, the defendants excepted to the ruling of the Circuit Judge. From the statement of the facts in the bill of exceptions, it appears, that the note sued on, and others, were given in consideration of a lot of ready-made clothing, which the plaintiff sold to the defendants in the City of Mobile, about the day of its date. Some of the witnesses testified, that the sizes of the different pieces did not correspond with the marks on them, and one of them stated, that the difference was so great, he was of opinion, that the disagreement proceeded from an intention to defraud. One of the witnesses proved, that the plaintiff represented the clothing to be fresh, well made, and suitable for

the market. It was also shown, that the plaintiff and defendants were negociating about three weeks—that, while the negociation was pending, the defendants frequently called and examined the clothing, and that the purchase was not made until after repeated and careful examinations. About one-half of the clothing had been sold by the defendants at considerable loss—the remainder still being on hand.

The plaintiff, as well as the defendants, were " professed dealers in ready-made clothing." There was a want of proof to shew, that the plaintiff was aware, at the time of the sale, of the want of correspondence between the marks and the clothes, or that he had other means than the defendants had, of ascertaining that fact—having himself purchased them at the North.

On these facts, the plaintiff's counsel moved the Court to charge the jury—

1st. The suppression of a fact equally open to both parties, and which the defendants, by reasonable, diligence might have ascertained, is no fraud, so as to discharge him from the contract ; and that, to entitle the defendants to avoid the contract, he must prove a fraudulent representation, as to some material fact, which he could not by reasonable diligence ascertain.

2d. That the representation that the goods were fresh, if they were afterwards submitted to the examination of the defendants before the sale, was not such a fraud as would enable the defendants to defeat the action.

The first prayer was refused, and in answer to the second, the Court, chargged the jury, " that the representation that the goods were *fresh*, if they were afterwards, and before the sale, submitted to the examination of the defendants, was no fraud, if they were not in fact fresh."

The Court charged the jury further, that, if there was a warranty in this case of the quality of the goods, and they did not correspond with such warranty of quality, the defendants were entitled to set-off whatever loss they may have sustained, by reason of the goods not answering to the warranty. That a warranty might be either express or implied—that whatever representations a party makes as to the quality of an article sold at the time of sale, is an implied warranty that the article is of

the quality represented. That, if the plaintiff made a false representation of the quality of the goods sold, knowing it to be false, it would defeat the action *in toto*. That fraud might be either express or implied; and that fraud might be implied from the fact, that a false representation was made as to the quality of the goods. That the concealment, by the plaintiff, of any fact within his knowledge, is in a law a fraud. That there may be fraud, as well in the suppression of the truth, as in the suggestion of a falsehood—and, if the plaintiff was guilty of a fraud in regard to his representations of the quality and value of the goods, it would defeat the action.

The jury returned a verdict for the defendants, and judgment being rendered thereupon, the plaintiff has prosecuted a writ of error to this Court.

DUNN, for the plaintiff.

CAMPBELL, for the dependant.

COLLIER, C. J·—In Ricks v. Dillahunty, 8 Porter's Rep. 133, we considered, somewhat at length, the nature of a contract for the sale of personal chattels, and the obligations and duties mutually enjoined upon the vendor and vendee. In that case, we say that, "to entitle the purchaser to recover for any defect in the quality, or soundness of the article, or property sold, except under special circumstances, he must prove that the seller warranted the thing sold, to be good and sound, or that he concealed or fraudulently represented its qualities." (See also, Ross on Vendors, 334; Hyatt v. Boyle, 5 Gill & Johns. Rep. 110 ; Chitty on Con. 4 Amer. ed. 356, *et post*. In order to constitute a warranty, no particular form of words is necessary—the word *warrant* need not be used. A bare representation or assertion as to the quality of the property, if so *intended and understood* by the parties, will amount to a warranty. But no matter how positive the representation of the seller may be, it will be regarded as an expression of his belief, or opinion, unless it was *intended and received* as a stipulation, that the property was of the quality represented. (Chitty on Con. 4 Amer. ed. 358, *et post*. Ricks v. Dillahunty, 8 Porter's Rep. 133, and cases there cited.)

Barnett v. Stanton & Pollard.

The cases in which the vendor will be liable for a defect of quality, where there is neither an express warranty, nor a fraud, are those, where, from the nature of the transaction, the law will imply a warranty. These are exceptions to the rule of *caveat emptor*—some of them are noticed in the case of Ricks v. Dillahunty ; but, as the facts of this case do not bring it within either of the qualifications there stated, we must enquire if there be any other exception applicable to them. In Gallagher v. Waring, 9 Wend. Rep. 20, which was an action for a breach of warranty on the sale of cotton in bales, the plaintiff insisted that, as the cotton was not in a condition to be inspected, previous to the sale, the vendor impliedly stipulated that it was merchantable. The Court thought it was competent for the plaintiff to shew, that the cotton was not of a good merchantable quality or condition : " as on a purchase without an opportunity for inspection by the vendee, the law implies a warranty by the vendor to this extent, whether the vendee has had an opportunity of inspection or not. Under such circumstances, it would be as absurd to permit a vendor to fulfil his contract by delivering an article, of the kind contracted for, of no value, as it would be to permit him to fulfil it, by delivering an article of a totally different kind." In that case, it was difficult, if not impossible, to ascertain the quality of the cotton by drawing of samples, as the " bales had been fraudulently packed in the interior of them with old, dry, and damaged cotton." And, in Hyatt v. Boyle, 5 Gill and Johns. Rep. 110, which was an action for the sum agreed to be paid for *twenty-four* kegs of tobacco, it was argued for the plaintiff, that a warranty of merchantable quality was implied, from the difficulty of inspection. But the Court said, that this exception to the general rule of *caveat emptor*, does not apply to cases circumstanced like the present ; but to those, where the examination at the time of sale, is, morally speaking, impracticable—as where goods are sold before their arrival or landing. The mere fact of the inspection being attended with inconvenience or labor, is not equivalent to its impracticability. If the purchaser desire to avoid it, and yet obtain the protection it would afford him, he must do so by exacting from the vendor an express warranty of quality." In Hart v. Wright, 17 Wend. Rep. 274, the case of Hyatt v. Boyle is

17

commented on, and the opinion expressed, that the law in respect to the examination of an article sold, in order to protect the purchaser, where there is neither an express warranty or a fraud, is not laid down with too much strictness.

Some of the later English decisions, certainly give countenance to the more extended doctrine of the civil law, that, on the sale of an article, there is an implied warranty that it is merchantable, or fit for the purpose for which it is sold and purchased. Without attempting to enquire, whether this exception to the general rule, as stated in Ricks v. Dillahunty, can be maintained upon *common law* principles, it is enough to say, that the exception has never been allowed to operate, where the article or commodity was open to the inspection of the vendee before his purchase. In the case before us, the negociation was pending for three weeks, and, in the language of the only witness who testified to the point, "the purchase was not in fact made, until after frequent and careful examinations were made." Upon the evidence then, there is no pretence for saying, that the defendants in closing the bargain, depended upon the superior judgment, or the more accurate knowledge of the plaintiff.

It does not appear, that the plaintiff was aware of the disagreement between the clothing and the marks, or that he had means of ascertaining that fact, which were not alike accessible to the defendants. The plaintiff, though accustomed, like the defendants, to deal in clothing, was not the manufacturer of the lot in question. (See Chitty on Con. 4 Amer. ed. 357-8 ; Gray v. Cox, 4 Barn. & Cres. Rep. 108 ; Gallagher v. Waring, 9 Wend. Rep. 20 ; Hart v. Wright, 17 Wend. Rep. 267 ; S. C. 18 Wend. Rep. 449 : Waring v. Mason, ibid. 425 ; Parkinson v. Lee, 2 East's Rep. 314.)

The facts set out in the bill of exceptions, do not seem to have been regarded by the jury, as amounting to a warranty of size and quality, or they would doubtless have found a verdict for the plaintiff, for so much as the clothing was worth, in obedience to the instructions of the Court ; but they must have imputed fraud to the plaintiff, and consequently, being charged that the contract was void in that event, and the defendants not liable, they returned a verdict in their favor.

A fraud cannot be implied from the mere falsity of a representation as to quality. It is necessary to shew, that the representation was made with a knowledge that it was untrue, or under such circumstances as manifested a recklessness of truth, without knowing whether it was true or false. An assertion of value, though untrue, if no warranty is intended, does not entitle the purchaser to relief; such assertion is regarded as matter of opinion, not knowledge, in which men may differ. If the seller represents what he believes, as to the value or quality of an article, and leaves the determination to the judgment of the buyer, there is neither fraud nor warranty in the case. (Kent's Com. 2 vol. 1 ed. 381.) - It has been said that, in *general*, a representation *though false*, will not afford the party to whom it was made, an opportunity of vacating the contract, if such representation was not *fraudulent*, and formed no part of the contract. (Chitty on Con. 530.) And it has been laid down, that, in order to sustain an action for a false representation, " fraud and falsehood must concur." (Ashlin v. White, Holt's Rep. 387.) But the law will infer fraud, when it is shewn, that what the defendant asserted was false within his own knowledge, and occasioned a loss to the plaintiff. (Foster v. Charles, 6 Bing. Rep. 396-7 ; Bing. 108 : Corbet v. Brown, 8 Bing. 433 ; Polhill v. Walter, 3 B. & Adol. Rep. 122. See also, Ross on Vendors, 334, *et post*.

The mere omission of the seller to disclose a fact within his knowledge, which would materially affect the value of the article, is not a fraud upon the vendee. There should be a fraudulent suppression to make it available. The expounders of ethical science hold it to be the duty of the seller to disclose defects which are within his knowledge ; but the common law is not so strict in its requirements. If the defects in the article sold, be open equally to the inspection of both parties, the law does not require the vendor to assist the observation of the vendee ; it is enough, if he does nothing with an intention to divert the eye, or obscure the observation of the purchaser. There is no breach of implied confidence, if one party profits by his superior knowledge of facts and circumstances, observable by both parties, or equally within the reach of their ordinary diligence, because neither party reposes in any such confidence,

unless it be specially tendered or required. The common law abhors fraud, but it does not go the length of giving indemnity against the consequences of indolence, or a careless indifference to the ordinary and accessible means of information. (Chandelor v. Lopus, Cro. Jac. Rep. 4. Kent's Com. 2 vol. 1st ed. 377.) In Mellish v. Motteux, Peake's N. P. Rep. 115, Lord Kenyon held, that the vendor of a ship, sold "*with* all faults," was bound to disclose a latent defect known to himself, and which it was impossible for the vendee to discover ; but Lord Ellenborough, in a subsequent case, decided, that a vendor is not liable, under such circumstances, unless it can be shewn, that he has used some artifice for the purpose of concealing the defect from the vendee. (Baglehole v. Walters, 3 Camp. Rep. 154. To the same effect, see Pickering v. Dowson, 4 Taunt. Rep. 779.)

Comyn in his treatise on contracts, lays down the law in very general terms : " it is a rule" says he " that each of the contracting parties is bound to disclose faithfully to the other, all material circumstances within his knowledge, respecting the subject matter of the contract ; and if this be omitted either from design, neglect, or accident, the contract is void." [1 Vol. 2 Am. Ed. 38.] The adjudged cases, do not however sustain the author. An omission to state all the defects of an article, from forgetfulness, or other cause, quite as excusable in a moral point of view, would not make the seller liable for a breach of warranty ; and certainly it would not amount to a fraud in fact. The author concedes " that the rule only applies to cases of concealment of material circumstances, which are exclusively within the knowledge of one of the contracting parties." But even to this extent, it cannot be admitted, without introducing the civil law rule, which implies a warranty of title and soundness, from the fact that a sound price was paid. A mere negligent, or accidental omission by the seller, to disclose some defect of the article sold, is not a fraud; because there is wanting the intention to deceive. The law upon this point, may, we think, be thus laid down ; the vendor is not bound to disclose defects, which are open to the observation of both parties, but if he designedly conceals, such as

are not thus visible, but rests exclusively within his own know-
ledge, the vendee may disaffirm the contract.

An offer to return the chattel in a reasonable time, on the
breach of a warranty, or where a fraud has been practised on
the purchaser, is equivalent in its effect upon the remedy, to
an offer accepted by the seller, and the contract is rescinded.
But the vendee in such case, must act with promptness, and
upon discovering that the subject-matter, is not such as was
contemplated, he must offer to return it.   [McMillion v. Pigg
& Marr, 3 Stewart's Rep. 168-9.]   It will not excuse the fai-
lure to offer to return, that the vendor lived at a distance from
the vendee, or in another State, if his residence was known.
A proposition to that effect, communicated though the me-
dium of the Post-office, is equivalent to a personal offer to re-
turn, and secures to the vendee every benefit resulting from it.
But a contract cannot be rescinded, without mutual consent,
where circumstances have been so altered by a past execution,
that the parties cannot be put *in statu quo*, for if it be rescin-
ded at all, it must be rescinded *in toto*.   [Hunt v. Sylk, 5
East's Rep. 449.]   If the vendee neglect to return goods, im-
mediately upon discovering a breach of warranty, or fraud,
but keep them and treat them as his own, by putting them
up to sale, or exercising other acts of ownership over them, he
cannot afterwards reject the contract.   Parker v. Palmer, 4 B.
& A. Rep. 387;  Grimaldi v. White, 4 Esp. Rep. 95; and in
Hopkins v. Appleby, 1 Starkie's Rep. 477, it was held, that a
soap-boiler, who had used *barilla* sold to him, and warranted
to be of a particular quality, for eight successive boilings, with-
out complaint, could not object to the quality in an action for
the price.   [See also Bluett v. Osborne, 1 Starkie's Rep. 384.]
We do not cite Hopkins v. Appleby, because we approve the
principle decided by it, but merely to show, that if the pur-
chaser would disaffirm a contract, he must act promptly.

In Burton v. Stewart, 3 Wend. Rep. 236. it was decided,
that fraud in the sale of a chattel, cannot be set up in bar of a
recovery of the amount of a note given on such sale, unless
the vendee on the discovery of the fraud, return the articles
purchased to the vendor, or show it to be entirely destitute of
value.   If the vendee retain the property, he cannot treat the

.sale as void. We decline, however the consideration of this point, as it is not essential to a decision of the cause.

The notion that fraud is so utterly destructive in its character, that a contract tainted with it, cannot acquire validity, though tacitly acquiesced in, or assented to, by the parties, is at variance both with reason and authority. We have seen that fraud authorizes the party overreached by it, to rescind the contract, but if he does not do this, he can certainly do no more, than resist the payment of the purchase money to the extent of the injury he has sustained. If he retains the property, he must pay its value, at least. The Circuit Court instructed the jury that, though the contract was continuing, a fraudulent representation of the quality and value of the cloththing " would defeat the action." In this, it is believed there is error, as well as in several other points decided in the charge —but as they will be readily discovered by a comparison of the bill of exceptions with this opinion, we deem it unnecessary to recapitulate. We have only to add, that the judgment is reversed and the cause remanded.