Boothby and others vs. Scales.

# Boothby and others vs. Scales.

WARRANTY: (1.) *How established.* (2.) *If made by an agent, when binding on the principal.* (3.) *When and how far implied as to manufactured articles.* (4, 5.) *Implied, not always excluded by express warranty; nor by presence of the article at the time of sale.* (6–9.) *Return of goods—reasonable time therefor—when a question for the court.*

PRACTICE: (10.) *Amendment of answer.*

1. The question, in any case, whether an express warranty was made, is one for the jury to determine on the weight of evidence, and it is not error to refuse to charge the jury, that if they have any reasonable doubt upon that question, they must find against the vendee.
2. An agent who is authorized to sell a manufactured article for the makers, may bind them by an express warranty, notwithstanding any private instructions which are unknown to the purchaser.
3. Where the manufacturer sells an article for a fair price, there is an implied warranty that it is reasonably fit for the purpose intended.
4. The taking of a written memorandum containing express warranties upon some points, does not exclude a warranty otherwise implied by law.
5. The purchaser is not precluded from recovering on such implied warranty merely by the fact that the article was present when he bought, if he had no proper opportunity to examine or test it.
6. The buyer of an article requiring skill and care in the construction and arrangement of its parts, to adapt it to its purpose—in this case a fanning mill—is entitled to a reasonable time after its delivery to test the same, and ascertain whether it is adapted to the purpose intended, and to return it if not so adapted.
7. What is a reasonable time within which the buyer should offer to return the article purchased, if it does not correspond to the terms of the warranty, either express or implied, depends on the circumstances of each case, and is usually a question for the jury.
8. But when the time which elapsed is evidently much greater than would ordinarily be required for testing the article and offering to return it, and there is no evidence of any peculiar circumstances excusing the delay, the question should be withdrawn from the jury.
9. In this case, defendant did not offer to return the fanning mill until six months after its delivery to him, nor until after his note given therefor (and here in suit) became due. Immediately after the purchase (in October) he loaned it to a neighbor, who took it to his farm, and used it for more than a month. After its return to defendant, he ran through it a hundred bushels of wheat, and testifies that it did not then do good work, but that he retained it until the following April, when he tried it for seed wheat, and found it would not do for that, and about the first of May he offered to return it. *Held,*
(1.) That as a matter of law the offer was too late.
(2.) Whether the act of loaning the mill as stated, was not a waiver of his right to test it, and to return it if found unsuitable, *quære.*

10. Where, in an action for goods sold, the defendant sets up in his defense an express warranty, but on the trial proves only an implied warranty, it is not error to permit him forthwith to amend his answer so as to make it conform to the facts actually proven, where there is no reason to believe that the plaintiff is surprised by such amendment so as to be prevented from proving facts which would negative such implied warranty.

APPEAL from the Circuit Court for *La Fayette* County.

Action upon a promissory note, commenced before a justice of the peace. The answer set up the following defense: That the note in question was given by defendant to plaintiff for a fanning mill, called the Eureka Fanning Mill; that plaintiff warranted and represented to defendant that said mill was a good mill; that it would clean wheat for ordinary purposes from 75 to 100 bushels an hour, and for seed from 50 to 75 bushels an hour; that it would separate oats from wheat, leaving both in marketable order; and that it would clean all kinds of grain well, fit either for market or for seed; that defendant had bought the mill and given his said note therefor, relying on such warranty and representations; that said warranty and representations were, however, untrue; that said mill did not answer to such representations; that it was, in fact, worthless, and of no value to the defendant. The issue thus raised was tried by the justice, and judgment rendered for the plaintiffs. The defendant appealed to the circuit court, and upon the trial in that court he testified substantially as follows: Meeting one day Canfield, the plaintiff's agent, who had a load of fanning mills, the agent asked him if he wanted a good mill. Defendant answered that he did—he wanted a mill that would clean grain for his seeder. He told Canfield that he had seen lately a posted bill signed by P. E. Pendrick, recommending a certain fanning mill made at Warren, and he asked Canfield if his were the same kind of mills. Canfield answered that they were; said it was a good mill, and would do

as recommended in the notice; that it would clean grain for market by running it once through, and fit for the seeder by running it through twice.    Defendant therefore bought the mill; he and Canfield drove a mile or two to the village, and there unloaded the mill at Gilpatrick's store, and put it under cover, and he executed his note for the price, dated October 24, 1867, and payable in six months from date.    A few days after this, he lent the mill, which still remained at Gilpatrick's, to one Walton, who took it to his farm to clean grain, and kept it several weeks before it was brought home.    After the mill was brought home from Walton's, he, defendant, tried it several times; ran through it perhaps a hundred bushels of wheat; tried it first for seed wheat about the first of April, 1868, just before spring sowing, and could not make the mill work well; it would not clean the wheat fit for seed; would not take out oats and cockle; he had run wheat through the mill four times without getting it clean, or fit for sowing; for his purpose the mill was worthless.    He had notified the plaintiffs that the mill did not work well, and had offered to return it, though not until after the note fell due.    When using the mill, he had turned it according to the directions on the mill.

Walton, to whom defendant had lent the mill, testified that he took it from Gilpatrick's to his place; that he tried it with wheat, first with wheat having mixed with it a good many oats, and then with wheat not having so many oats; that he had run through the mill perhaps 100 bushels in all; that it did not work well, was not such as would suit him; it might do to clean a grist with, but it would not separate oats from wheat.    Dickson testified that he had seen the mill at Walton's; had seen Walton try it; that he had himself worked on 10 bushels of wheat for three hours with the mill, and could not clean it; that the mill did not work well, and in his opinion was of no value.

On the part of the plaintiffs, Canfield, the agent who sold the mill, denied that he had warranted it, that he had any authority to warrant it, or that defendant had said anything to him at the time of sale about the posted bill of Pendrick's; he had never told defendant that the mill would clean for ordinary purposes from 75 to 100 bushels an hour, or from 50 to 75 bushels an hour for seed, or would separate wheat from oats, and leave both in a marketable condition. He had seen the mill and tried it himself while it was at Walton's; it was well made, cleaned well, and there was no fault with it.

Curtis testified that he was a machinist, and was foreman and superintendent of the plaintiffs' establishment at Warren, and that all the mills passed through his hand. They were all made on the same principle, and there was no reason why defendant's mill should not do as good work as others of the same class that universally gave perfect satisfaction. He had seen defendant's mill; had gone to defendant's place for that purpose on learning that he was dissatisfied; he found the mill to be of good material, well made, and perfect in every way; had tried it himself, and it did good work.

The testimony being all in, plaintiffs moved to exclude the defendant's testimony on the question of warranty, for the reason that it was substantially different from and at variance with the defense set up in the answer. The court overruled the motion, and allowed the defendant to file *instanter* an amended answer, which, besides alleging a special warranty as to the quality of the mill, set up the fact of an implied warranty, and that the mill was defective in that it did not answer the purpose for which it was purchased; to all of which the plaintiffs objected on the ground that such amended answer raised a new issue, and was a surprise on them.

After argument, the plaintiffs asked the court to

give to the jury the following among other instructions: 1st. "When the manufactured article is present and open · to the buyer, the law, except in case of provisions, implies no warranty as to the quality of the article sold, in the absence of proof of actual warranty. In such cases the rule of *caveat emptor* applies, and the purchaser buys at his own risk." 2d. "Warranty is a contract, and the defendant, alleging a special warranty, and relying upon that for a defense, must prove the special warranty which he sets up, or, failing to do so, is not entitled to a verdict." For other instructions asked for, and which, with the foregoing, were refused, and for the substance of the charge actually given, see the opinion.

Verdict for defendant; new trial denied; and judgment on the verdict; from which the plaintiffs appealed.

*Henry S. Magoon,* for appellants, in support of the first instruction asked for and which the court refused to give, and against the proposition that the law in all cases implies a warranty on the part of the manufacturer that his fabrics shall answer the purpose for which they are manufactured and sold, cited 1 Parsons on Contracts, 460, and cases there referred to; also *Getty v. Rountree,* 2 Chand. 37; *Hargous v. Stone,* 1 Seld. 73; *Hart v. Wright,* 17 Wend. 269; 18 id. 448; *Van Riper v. Ackerman,* 3 E. D. Smith, 58; *Hyland v. Sherman,* 2 id. 234; *Salisbury v. Stainer,* 19 Wend. 159; *Milburn v. Belloni,* 34 Barb. 609; 2 Kent's Com. 478; Cowen's Treat. 252–260; *Mixer v. Coburn,* 11 Met. 559; *Deming v. Foster,* 42 N. H. 165; *Mason v. Chappell,* 15 Gratt. 572; *Humphreys v. Comline,* 8 Blackf. 516; *Beninger v. Corwin,* 4 Zab. 257; *Chanter v. Hopkins,* 4 M. & W. 399. In support of the second instruction asked for, he cited *Deming v. Foster,* 42 N. H. 165; *Walton v. Cody,* 1 Wis. 420; *Reynolds v. Graves,* 3 id. 416; *Warren v. Bean,* 6 id. 120; *Botkin v. Earl,* id. 393; *Eilert v. City of Oshkosh,* 14 id. 586. On

the question of time, and to show that the delay of the defendant in offering to return the mill was unreasonable, and should be construed into an acceptance on his part, he cited, 1 Parsons on Contracts, 474; *Milner v. Tucker*, 1 Car. & Payne, 15; *Percival v. Blake*, 2 id. 514; *McGuire v. Kearney*, 17 La. An. 295; *Ward v. Reynolds,* 32 Ala. 384. And to the point that the court erred in giving defendant leave to file his amended answer, changing the nature of his defense, against the plaintiff's objection and affidavit of surprise, he cited *Stevens v. Brooks*, 23 Wis, 196; *Newton v. Allis*, 12 Wis. 378; *Larkin v. Noonan*, 19 Wis. 82; *Sweet v. Mitchell*, 15 Wis. 641; *Shernecker v. Thein*, 11 Wis. 556; 31 How. Pr. 164; 39 Barb. 104; 16 N. Y. 250; 42 Barb. 177; 2 Duer, 153, 481; 4 id. 362.

*P. B. Simpson & P. A. Orton*, for the respondent, *per contra*, cited, *Getty v. Rountree*, 2 Chand. 28; *Bird v. Mayer*, 8 Wis. 362; *Fisk v. Tank*, 12 id. 302, 303; *Ketchum v. Wells*, 19 id. 25; *Nelson v. Cowing*, 6 Hill, 336; *Schuchardt v. Allens*, 1 Wall. 359; Secs. 33 and 37, ch. 125, R. S.

DIXON, C. J. It may reasonably be doubted whether the first answer of the defendant was not sufficient to admit proof of an implied warranty. But whether it was or not, there was no error in permitting the amendment. The court was satisfied, and no doubt properly so, notwithstanding the affidavit of the plaintiff *Platt*, that it was not a case of surprise or injustice to the plaintiffs to allow it. It was obvious, as to the implied warranty which it was the object of the amended answer to set up, that the plaintiffs had all the testimony before the court and jury of which that issue was susceptible. They could rebut or disprove the implied warranty only by showing, either that they were not the manufacturers of the mill, or that Canfield was not their agent with authority to sell it, or that there was a special agreement at the time of sale

that the defendant should take the mill at his own risk, whether it would work well or answer the purpose for which it was intended, or not. The two former facts the plaintiffs did not deny, nor pretend to; nor was there any intimation or pretense of the latter, although both Canfield and the defendant had been upon the stand as witnesses, and fully examined and cross-examined with respect to the bargain or transaction. And besides, Canfield was still in court, and might have been called again as a witness after the amendment was allowed, had the plaintiffs proposed to rebut the implied warranty by any testimony of the kind last referred to. They made no such offer, and it is too obvious from the whole case that they were not taken by surprise, and that their testimony was all in, to require further comment.

The other exceptions, except that to the order overruling the motion for a new trial, relate to the instructions given to the jury, and to the requests to charge which were refused. Some of these will best be considered with reference to certain general principles which govern in cases of this kind. It is well settled that where the manufacturer sells an article for a fair price, the law implies a warranty that it is reasonably fit for the use for which it is manufactured or purchased. *Walton v. Cody*, 1 Wis. 420; *Misner v. Granger*, 4 Gilman, 69; *Merriam v. Field*, 24 Wis. 640; *Jones v. Bright*, 5 Bing. 529 (15 E. C. L. 529); *Brown v. Edgington*, 2 Man. & Gran. 279 (40 E. C. L. 371). In *Jones v. Just*, L. R. 3 Q. B. 202, the rule is stated by MELLOR, J., on the authority of the two cases last cited, that "where a manufacturer or a dealer contracts to supply an article which he manufactures or produces, or in which he deals, to be applied to a particular purpose, so that the buyer necessarily trusts to the judgment or skill of the manufacturer or dealer, there is in that case an implied term or warranty that it shall be reasonably fit for the purpose to which it is

to be applied." And again, where a manufacturer sells an article for a particular purpose, of which he is notified at the time by the purchaser, he warrants it as free from latent defects rendering it unfit for that purpose. *Leopold v. Van Kirk, (ante,* p. 152). In *Merriam v. Field, supra,* it was held by this court, on the authority of an Exchequer Chamber decision, that the taking of a written memorandum containing certain express warranties upon other points, did not exclude a warranty which the law implies, and that the purchaser might sue for and recover damages upon a breach of such implied warranty. And it was furthermore held in the same case, that the purchaser was not precluded from recovering because the article purchased was present at the time of sale, if, in fact, he had no opportunity for testing or examining it.

These principles seem to dispose of the two first requests to charge, and to show that there was no error in refusing them. The buyer of a manufactured article like a fanning mill or other similar machine, having no previous skill or experience, cannot ascertain from mere inspection whether it will operate well or not, or whether it is reasonably suited to the purpose for which it was made and to which he intends to apply it. Nothing short of an actual trial or experiment will determine those questions. As well might an unskilled person be required to ascertain and take notice at his peril whether a watch will keep time by looking at its cases or machinery and the parts of which it is composed, when in treaty with the manufacturer for it, and when the manufacturer knows it is wanted to keep time, and sells it for that purpose, and receives a fair price for a good article. It would be a strange doctrine to apply to such a case, if the watch turned out upon trial to be worthless, that the purchaser's eyes were his guide, and he himself the judge from mere inspection, and that the manufacturer could retain the price, giving nothing

for it in return.   Such is not the law, and clearly never ought to be.   The defendant here had the right of actual experiment with the fanning mill after he took it into his possession, in order to ascertain its working qualities, and was not precluded from relying on the implied warranty because he saw the mill at the time of purchase.   The first request assumed the contrary to be the law, and the second that there could be no defense except upon the special warranty alleged to have been made.   Both requests were properly refused.

By the third request the court was, among other propositions, asked to charge that " if the jury in this case should *have reasonable doubts* from the evidence whether any warranty were in fact made, or what the terms of such warranty were, if any was made, then you will find for the plaintiffs."   The reference here was to the alleged special warranty. The rule of the criminal law giving the accused the benefit of any " reasonable doubts " which the jury may have, is well known.   That rule, however, does not ordinarily extend to civil actions ; and we are not aware of any principle upon which the plaintiffs in this action could claim or were entitled to the benefit of any reasonable doubts in the minds of the jury, more than the defendant.   The request was properly denied.

The fourth request to charge was erroneous, because it omitted entirely all ground of liability upon the implied warranty.   If the jury found no special warranty, or no breach of it, they were required to find for the plaintiffs.   It would have been erroneous so to have instructed.

Of the general charge it is unnecessary particularly to speak, as its correctness in most respects is vindicated by what has already been said.   It appears that the alleged special warranty consisted in the affirmation of the agent Canfield, who sold the mill,

that it possessed the capacities set forth in a certain printed advertisement or post-bill issued and signed by one Pendrick, who was engaged in selling the same kind of mills for himself, and which advertisement or post-bill the defendant had seen before the purchase. It appears, also, from a statement in the charge of the court, that the advertisement was read before the jury; but as it is not found in the bill of exceptions or record, we are not informed of its contents, except as we infer them from other parts of the record. The court instructed that if the jury found the agent made the affirmation, it was a warranty, and the plaintiffs were bound by it. To this it is objected that the agent was not authorized to make the warranty. One of the plaintiffs, *Platt*, testified: "Mr. Canfield was employed by us to sell mills merely; he was not authorized to make any warranty." This testimony is relied upon to show that the warranty was unauthorized, and the instruction erroneous. The answer is, that the agent was authorized generally to sell, which authority included the power to sell with warranty, unless the purchaser knew the private instructions of the agent, or that he was exceeding his powers. Story on Agency (Redfield & Herrick), §§ 102, 132, 128, 127, 133 and 443. It is not claimed that the defendant had any knowledge whatever of the private instructions of the agent, or of any restrictions upon his power as an agent having general authority to sell.

The court further charged the jury as follows: "The defendant has introduced evidence to prove he has offered to return the mill to the plaintiffs. In a case of a breach of the warranty in reference to matters which are the condition of the purchase, he had a right to do this within a reasonable time; and such offer would be a complete bar against the plaintiffs' recovery to any extent. Whether such offer of return was made, and made within a reasonable time

after opportunity was given to test the machine, it is for you to determine from the evidence. If there was a breach of warranty, and the offer to return was not made within a reasonable time, the defendant must pay what the mill is actually worth." To this instruction exception was taken by the plaintiffs. We see no error in the instruction, unless it be upon the point urged against it, and also against the order refusing the motion for a new trial, that there was no evidence to authorize the submission or for the jury to consider as to the offer to return the mill having been made within a reasonable time. This in my judgment is the only doubtful or difficult point in the case, and it seems to me to be fatal to the verdict and judgment. It is settled in this state, as in several others, that for a breach of warranty without actual fraud on the part of the vendor, the purchaser is entitled to rescind the contract, and for that purpose may return the goods, or, what is the same thing, offer to return them, within a reasonable time. *Woodle v. Whitney*, 23 Wis. 55; *Fisk v. Tank*, 12 Wis. 303; *Bryant v. Isburgh*, 13 Gray, 607; *Curtis v. Hannay*, 3 Espinasse, 83; *Perley v. Balch*, 23 Pick. 283; *Dorr v. Fisher*, 1 Cush. 274; *Hyatt v. Boyle*, 5 Gill & Johnson, 121; *Franklin v. Long*, 7 id. 407; *Taymon v. Mitchell*, 1 Md. Ch. 496; *Barrett v. Strenton & Pollard*, 2 Ala. 181; *Same v. Same*, id. 195; *Kellogg v. Denslow*, 14 Conn. 411; *Fielder v. Stockin*, 1 H. Black. 17; *Warring v. Mason*, 18 Wend. 425; *Thompson v. Botts*, 8 Mo. 710; *Borrekins v. Bevan*, 3 Rawle. 23; *Carter v. Stennet*, 10 B. Mon. 250; *Milton v. Rowland*, 11 Ala., 132; *Ferguson v. Oliver*, 8 S. & M. 332; *Heastings v. McGee* (Supr. Ct. Pa.), 10 Am. Law Reg. (N. S.) 338. The question as to what is a reasonable time within which to return or make the offer, is considerably discussed in the two cases in 2 Ala. 181 and 195, and some English authorities cited. It was held, and no doubt correctly, that what was a reasonable time was a question of fact for the jury under

the circumstances. But in the same case, where the offer to return was made about eight months after the goods were sold and delivered, the court said, as a matter of law, that ordinarily one-half that time would be regarded as unreasonable. In the other case the court say that " an offer to return the chattel in a reasonable time on the breach of a warranty, or where fraud has been practiced on the purchaser, is equivalent, in its effect upon the remedy, to an offer accepted by the seller, and the contract is rescinded. But the vendee in such case must act with promptness, and upon discovering that the subject-matter is not what was contemplated, he must offer to return it. It will not excuse the failure to offer to return, that the vendor lived at a distance from the vendee, or in another state, if his residence was known. A proposition to that effect, communicated through the medium of the post-office, is equivalent to a personal offer to return, and secures to the vendee every benefit resulting from it. * * * * * * If the vendee neglect to return the goods immediately upon discovering a breach of warranty, or fraud, but keep them and treat them as his own, by putting them up to sale or exercising other acts of ownership over them, he cannot afterwards reject the contract." And see also, 14 Conn. 411, and cases cited. It seems to me necessarily to follow from the rules which have been thus correctly laid down, that the offer to return here came too late, and that the time was most unreasonable; for, although it is a question of fact for the jury where there is any evidence for them to consider, or upon which, under the circumstances, a verdict may be sustained that the time was reasonable, yet it is clear that it must, after some lapse of time and under some circumstances, become a question of law for the court. Cases may arise where, although an offer to return was made, the court must say, as matter of law, that it came too late, and that evidence of it is not to be considered by the jury.

It is then in the nature of inadmissible testimony, which the court is authorized to reject, or to withdraw from the consideration of the jury. No jury has the power arbitrarily to say that six months or six years is a reasonable time in which to test a fanning mill, when everybody knows that a single day, or at most two or three days, with all the conveniences at hand, is amply sufficient for that purpose. The very meaning of the rule is, that the purchaser shall have fair and sufficient time and opportunity, all the circumstances considered, including his own, to test and examine the property and ascertain whether it corresponds with the warranty or not, and if not, immediately to return or offer to return it to the seller, and claim a rescission of the contract. It is inconsistent with the nature of the right or privilege thus given the purchaser, that there should be any unnecessary delay in the exercise of it. The seller in the meantime is deprived of the use of his property, and perhaps of the opportunity for re-sale. He is liable to refund the purchase money with interest from the time of sale; or, if it has not been paid, he loses the interest on it. These considerations are sufficient to require promptness and forbid needless delay on the part of the purchaser. If it appears that he had ample time and opportunity to test and examine the article, and ascertain its quality or capacity with reference to the warranty, and might have conveniently done so, but neglected to do it, such neglect should be regarded as a waiver of the right to rescind, and as an election on his part to retain the property, subject to such claim for damage as he might subsequently establish.

The proof in this case was, that the defendant did not offer to return the mill until more than six months after he had purchased and taken it into his possession, nor until after the note given for it, and upon which this action is brought, became due. It was likewise shown that immediately after the purchase

he loaned the mill to a neighbor named Walton, who took it to his farm, and kept and used it for more than a month before returning it. Walton was a witness on the stand for the defendant, to prove that the mill worked badly when he used it. Whether he informed the defendant, upon returning the mill, that it was not a good one, or worked badly, does not appear. It is most natural to suppose that he would have done so. It furthermore appeared by the testimony of the defendant himself, that, after the mill was returned, he ran through it over one hundred bushels of wheat, some for flour for his family, and some for sale. The time when he did this is not shown, but the inference is, that it was soon after the mill was returned by Walton, which must have been about the 1st of December, 1867, the mill having been purchased on the 24th of October of that year. The defendant testified that the mill did not then do good work, or clean wheat suitably for the mill or market. He further testified that he retained it, giving no notice to the plaintiffs, until the next April, when he tried it for seed wheat; and, finding it would not do for that, he thereafter, about the 1st of May, offered to return it. It clearly seems to me that no offer to return could then be made. If he found the mill would not clean wheat suitably for ordinary purposes, why should the defendant have retained it to clean wheat for seed? The former was certainly a sufficient test of its capacity in both respects. Or why was the mill not tested for seed wheat at the same time? I think that by retaining the mill after the first trial, and not then immediately offering to return it to the plaintiffs, the defendant made it his own, without privilege of return, even supposing his loan of it to Walton for upwards of a month was not an absolute waiver of such privilege, which I am also strongly inclined to think. Such lending seems to me to have been the exercise of an act of ownership

inconsistent with the mere right of trial or examination, which the purchaser under such circumstances has, where he intends to return the property on account of a breach of warranty or of any of the conditions of the purchase.

In this case it appears, therefore, not only that the defendant had ample time, opportunity and conveniences for testing the machine, but that he actually did so, and learned its defects long before he offered to return it to the plaintiffs. Whether, under any circumstances, a purchaser might retain a mill, or machine, or goods or chattels of any kind, so long as six months or more, without return or offer of return to the seller, and without waiving the right still to make the offer, is a question not now requiring consideration. Such delay, to be tolerated, would without doubt require explanation and the proof of facts and circumstances excusing it, or showing it was necessary and proper; of which we have no evidence in this case.

*By the Court.*—The judgment of the circuit court is reversed, and a *venire de novo* awarded.