# Stephenson *v.* Allison, *et al.*

*Bill in Equity for the Rescission of a Contract and the Cancellation of a Mortgage.*

[123  439]
[131  214]

[123  439]
[139  204]

123  439
f142  674

123  439
144  257

1. *Rescission of contract; when demand for rescission must be proved.*—Where a bill is filed to rescind a contract of purchase of the privilege of selling a patent right in a given territory and to cancel a mortgage given to secure the payment of the purchase price, on the ground that the complainant was induced to enter into the contract and to execute the mortgage by reason of false and fraudulent representations on the part of the defendant, and it is averred in said bill that the complainant had demanded a recission of the sale and had offered to return to defendants all rights he had acquired and that the defendants had refused the demand and offer, upon failure of the complainant to prove that he had made a demand upon the defendants to rescind the contract of sale and that there was a refusal on their part to comply with such demand, the complainant is entitled to relief.

2. *Same; fraud; offer to rescind must be made as soon as fraud is discovered.*—Where one has been induced by false and fraudulent representations to enter into a contract of purchase, in order for him to disaffirm the sale and rescind such contract, he must make his election to do so at the earliest practicable moment after the discovery of the fraud; and if after such discovery he treats the contract as being in force and receives the benefits therefrom, he can not subsequently maintain a bill to rescind the sale and to cancel the contract.

3. *Letters patent; issuance is prima facie evidence of validity of patent; burden of proof.*—The issuance of letters patent to a person raises a presumption in favor of the validity of such letters and of the patentability of the article.

4. *Equity pleading; irregularity in register's report* —In a chancery suit, where the decree orders the sale of certain lands which are correctly described therein, and the register is directed to make a report of said sale, irregularities in the description of the land as found in the register's report of the sale, are not sufficient grounds for refusing to confirm the report.

5. *Promissory note; stipulation for payment of attorney's fees enforceable.*—The stipulation in a note that if the debt evidenced thereby is not paid at maturity and it becomes necessary to employ an attorney to collect it, the promissor will pay a certain per cent in addition to the debt as attorney's fees, to reimburse the payee of the note for the amount expended for attorney's services, when not a mere cloak for usury, will be enforced; and in such case it will be presumed that the amount stipulated for is a reasonable attorney's fee.

6. *Same; same; defense of usury must be specially pleaded.*—In a suit upon a note stipulating for the payment of attorney's fees, in case the debt is not paid at maturity, where the promissor desires to avail himself of the defense of usury, against the payment of such attorney's fee, he must specially plead the fact.

7. *Same; same; not necessary to prove value of services.*—In a suit upon a note which contains a stipulation that in case it is not paid at maturity the maker will pay ten per cent. as attorneys' fee, it is not necessary for the attorneys bringing the suit to introduce evidence to show their employment and the services rendered, since their appearance will be presumed to authorize it, and the court takes judicial knowledge that services have been rendered. (SHARPE, J., *dissenting*). ·

APPEAL from the Chancery Court of Morgan.

Heard before the Hon. WILLIAM H. SIMPSON.

The bill in this case was filed by the appellant against the appellees. The purpose of the bill and the facts of the case necessary to an understanding of the decision on the present appeal are sufficiently stated in the opinion.

On the final submission of the cause upon the pleadings and proof, the chancellor rendered a decree denying the relief prayed for and ordering the bill dismissed, and it was further decreed that the relief prayed for in the cross bill filed by Allison and Harris be granted, and that the mortgage executed by the original complainant to the cross complainants be foreclosed, for the amount

of the mortgage debt and 10 per cent. solicitor's fees, the mortgage and notes stipulating for such fee. This decree ordering the sale of the lands contained in the mortgage, gave the description of said lands as the same were described in said mortgage, and it was referred to the register to make said sale and report thereon. The register reported the sale of the said lands described in the mortgage, but did not designate the number of acres, and there were some irregularities in the description as contained in the report of the register. This report of the register was confirmed.

The complainant appeals, and assigns as error the decree of the chancellor denying the relief prayed for in the original bill, and granting the relief prayed for by the cross complainants, and the decree confirming the report of the register.

E. W. GODBEY, for appellant.—Stephenson was not charged with knowledge of the contents of the patent or of what the patent really covered.—*Burroughs v. Pacific Guano Co.*, 81 Ala. 255, 258; 2 Pom. Eq. Jur., § 895; 1 Bigelow on Fraud, § 480.

If the party wrongfully supposed the original contract to be binding, or has not full knowledge of the fraud practiced upon him, "the voidable nature of the transaction is unaltered."—*Pierce v. Wilson*, 34 Ala. 596; 2 Pom. Eq. Jur., § 965. The obligation to rescind "will yield to circumstances which show that it would be unjust or an idle ceremony to require it."—1 Bigelow on Fraud, 424; 21 Am. & Eng. Encyc. Law 88; *Root v. Johnson*, 99 Ala. 90.

The rule that a contract cannot be rescinded unless the parties can be placed *in statu quo* does not apply where one party has obtained an advantage over the other by fraud, and the courts can still reach and further the ends of justice.—21 Amer. & Eng. Encyc. of Law, 85; *Bullock v. Tuttle*, 90 Ala. 435; 13 Fed. 595; 2 Pom. Eq. Jur., § 910.

The machine was valueless and unpatentable and no offer to rescind was necessary.—1 Bigelow on Fraud, 424; *Brewster v. Burrett*, 28 Am. Rep. 205; *Nat. Bank v. Peck*, 8 Kan. 660; *McKee v. Eaton*, 26 Kan. 226. The

court erred in awarding counsel fees not provided for by the mortgage, and not alleged or proved to be reasonable.—*Camp v. Randle*, 81 Ala. 240; *Decatur Min. L. Co. v. Palm*, 113 Ala. 531; *Tompkins v. Drennen*, 95 Ala. 463.

O. KYLE and J. C. EYSTER, *contra.*—The complainant in this case is estopped from denying the validity of the contract and estopped from claiming a rescission. "When a party with full knowledge, or with sufficient notice or means of knowledge, of his rights, and all the material facts, lies by for a considerable time, or abstain from impeaching the transaction, so that the other party is induced to suppose that it is recognized, it is acquiescence, and the transaction although originally impeachable becomes unimpeachable in equity."—2 Pom. Eq., pp. 499-500; *Lawrence v. Dale*, 1 N. Y. Chan. (Law ed.), marg. p. 530; *Cholmondeley v. Clinton*, 2 Meriv. 171; *Honner v. Morton*, 3 Russ. 65; *Selsley v. Rhodes*, 1 Bligh 1; *Vigers v. Pike*, 8 Clarke & F. 562; *Odling v. Give*, 41 N. H. 465; *Bassett v. Salisbury*, 47 N. H. 426; *Peabody v. Flint*, 6 Allen 52; *Tach v. Adams*, 10 Cush. (Mass) 252; *Briggs v. Smith*, 5 R. I. 213; *Cobb v. Hatfield*, 46 N. Y. 533.

The complainant failed to prove an offer of rescission. Having averred in his bill an offer to rescind and the refusal on the part of the defendants to do so, the failure to make proof of such offer of rescission is fatal to his recovery.—*Pierce v. Wilson*, 34 Ala. 606; *Gilmer v. Wallace*, 75 Ala. 220.

A rescission cannot be had, because the parties cannot be put *in statu quo.*—*Dill v. Camp*, 22 Ala. 249,258; *Pharr v. Bachelor*, 3 Ala. 237; *Barnett v. Stanton*, 2 Ala. 182; *Lea v. Cassen*, 61 Ala. 316; *White v. Wood*, 15 Ala. 358. Even if the rule be invoked in cases of fraud, that an offer to rescind is equivalent to putting the parties *in statu quo*, we have seen above that no offer has been made or proven. It is utterly impossible for the parties to be put *in statu quo* now, because Stephenson has sold part of the territory he bought. When this is so, he can not rescind.—*McCrellis v. Carlton*, 86 Am. Dec. 700; *Bailey v. Fox*, 78 Cal. 389; *Neal v. Reynolds*, 38 Kan. 432; 21 Am. & Eng. Encyc. Law, 87 and note; 8 Am. & Eng. Encyc. Law, 807; 8 Am. & Eng. Encyc. Law, 817

and note 13; *Thomas v. Quintard,* 5 Duer, (N. Y.) 80; 18 Am. & Eng. Encyc. Law, 141. The right of rescission must be exercised within a reasonable time.—*Pierce v. Wilson,* 34 Ala. 596; 18 Am. & Eng. Encyc. Law, 140, note 7. It has been held that an election to rescind on the ground of fraud should be exercised "at the earliest practicable moment after discovery of the fraud."—*Masson v. Bovet,* 43 Am. Dec. 651.

In *Lockwood v. Fitts,* 90 Ala. 150, it was held that the lapse of four months during which time the purchaser attempted to sell, or exchange the property (as Stephenson did in this case), would raise "a presumption of acquiescence" and furnish "strong evidence" that he did not rely on the representations.

Again: If the right to rescission ever existed in this case, it has been lost by the acts and conduct of complainant.—Clark on Contracts (Horn Book Series), 348; *Young v. Arntz,* 86 Ala. 116; *Grymes v. Sanders,* 93 U. S. 55; *Rugan v. Savin,* 53 Fed. Rep. 415.

The complainant has not proved the averments contained in his bill either of the infringement of the defendant's patent, or that the churn was not patentable. The presumption of patentability arising from the grant of letters must stand until overborne by proof.—*Am. Box Machine Co. v. Day,* 32 Fed. Rep. 585; *Mesker v. Theuner,* 42 Fed. Rep. 329. This proof must be beyond a reasonable doubt.—*Ross v. Montana,* 45 Fed. Rep. 424; *Washburn v. Beat 'em All,* 143 U. S. 275; *Cantrell v. Wallick,* 117 U. S. 689; *Coffin v. Ogden,* 18 Wall. (U. S.) 120.

As a full, perfect and complete answer to the charge of fraud, we say, even if the court comes to the conclusion that Allison perpetrated a fraud, either innocently or intentionally, the complainant has ratified the contract after the discovery of the alleged fraud. *Thompson v. Lee,* 31 Ala. 303; *Garrett v. Lynch,* 45 Ala. 204; *Barnett v. Stanton,* 2 Ala. 189; *Betts v. Gunn,* 31 Ala. 219; *Burton v. Stuart,* 3 Wend. 236; *Dill v. Camp,* 22 Ala. 249.

In the case of *Masson v. Bovet,* 43 Am. Dec. 653, it is said: "If the party defrauded would disaffirm the contract he must do so at the earliest practical moment after

discovery of the cheat. That is the time to make his election, and it must be done promptly and unreservedly. He must not hesitate; nor can he be allowed to deal with the subject matter of the contract and afterwards rescind. The election is with him; he may affirm or disaffirm the contract but he cannot do both.; and if he concludes to abide by it, as upon the whole advantageous, he shall not afterwards be permitted to question its validity. The party who would disaffirm a fraudulent contract must return whatever he has received upon it. This is on a plain and just principle. He cannot hold on to such part of the contract as may be desirable on his part and avoid the residue, but must rescind *in toto,* if at all."—Addison on Contracts, p. 273; *Betts v. Gunn,* 31 Ala. 221. This doctrine is sustained by the following cases.—*Dill v. Camp,* 22 Ala. 249; *Barnett v. Stanton,* 2 Ala. 181; *Borum v. Garland,* 9 Ala. 452.

TYSON, J.—The bill in this cause was filed by the appellant on October 22, 1895, seeking a rescission and cancellation of a certain mortgage executed by him to the respondent Allison on the 27th day of September, 1894, to secure the payment of three promissory notes of $333.33 1-3 each, due respectively January 27th, 1895, May 27th, 1895, and September 27th, 1895, upon the ground of fraud.

It was alleged in the bill that this mortgage was executed by the complainant to secure an indebtedness contracted with the respondent Allison for the sale of a right to sell a patented churn in the State of Arkansas, and that Allison represented he had a patent upon this churn, the same being a new and novel invention, when in truth he had no patent and if he had, the same was neither useful nor novel and therefore void, and consequently there was no consideration for the notes and mortgage. The bill further charges that Allison represented to the complainant that he had a patent upon a certain sample churn which he exhibited to the complainant, when in fact, if he had a patent at all, it was upon a different churn than the one exhibited; and that he represented to the complainant that the patented churn was useful and salable, that he had made sales of

the patent right to make and vend the churn in large areas of territory in Alabama, Tennessee and Texas, when in fact, said representations as to salableness and of the sales of the patented right in those territories, were wholly false.

There was an amendment to the bill in which it was averred that before the commencement of the suit the complainant demanded of Allison a rescission of the sale and transfer of the patent right to him for the State of Arkansas and a release of the mortgage, which Allison had refused, and had offered to transfer and return to him all rights which the complainant had acquired under the deed to him from Allison to sell the churn in the State of Arkansas. It was also averred in another amendment to the bill, that "complainant submits himself to the jurisdiction of the court, and offers to restore or return anything which the court may consider him bound to do.

"After complainant's return from Arkansas he sent one E. E. Gunn to defendant Allison to get him to agree to a cancellation or a rescission of the trade, but said Allison refused to do so, and then said Gunn saw said defendant Harris who likewise refused to agree to a rescission even for a bonus of $500 though complainant was under no obligation to rescind. Not before complainant's return from Arkansas did he know that Allison had not a patent on the particular device exhibited to him."

Allison answered the bill in which he specifically denied making any false statements whatever, and asserting that he had letters patent from the United States government authorizing him to make and vend the churn throughout the said United States of America under the act of Congress regulating patents, and setting up as a further defense, that if there was any fraud, the complainant had ratified and affirmed the contract of sale by making sales of the patent right to persons in the State of Arkansas to make and vend the churn in several counties in that State. Harris, the other respondent to the bill, who was the owner of two of the notes secured by a transfer from Allison, filed his answer showing his acquisition of these notes. Both the answers of Allison

and Harris were made cross-bills and prayed a foreclosure of the mortgage.

The answer of complainant to these cross-bills contains, in addition to the averments of fraud alleged in his bill and amended bill, the defense that the letters patent issued to Allison were invalid for the reason that the invention or device he sold to complainant was not patentable.

So far as the complainant's right to maintain the bill and the decree denying him relief are concerned, there are two propositions supported by the undisputed evidence conclusive of the correctness of the decision of the chancellor. The first proposition, upon which the correctness of the decree may be based, is the failure of the complainant to prove any demand of Allison to rescind the contract of sale at any time, or the refusal of Harris to agree to a rescission for a bonus of $500, and the knowledge on the part of the complainant "that Allison had not a patent on the particular device exhibited to him" until his return from Arkansas. On the contrary, the evidence affirmatively establishes that no demand was made upon Allison and no refusal by Harris as alleged. Furthermore, complainant by his own testimony establishes that he had seen the letters patent before making the purchase, and after making the trade he asked Allison for them, who informed him that he would have to send to Washington and get a copy. "I wrote to Troup at Washington and he sent them to me. I saw the letters patent about the time I made the trade or shortly afterwards."

The second proposition which is conclusive against his right to maintain the bill to rescind for fraud is also supported by his testimony in which he shows, that after he became aware that Allison induced him to enter into the contract of purchase by fraudulent representations, as he alleges, he sold in the State of Arkansas a number of patent rights, receiving notes, money and land in payment therefor. Quoting his own testimony on this point, in answer to the question, "State whether or not you had received information of the falsity of the various representations made by Allison to you prior to disposing of this territory in Arkansas?," he said: "Yes, sir, I did. I

[Stephenson v. Allison *et al.*]

knew it before I went to Arkansas. Of course, I was into it and had to do the best I could. After I commenced working I found that it was no good." Continuing he said: "I learned that [referring to certain statements which he alleges Allison made that were false about the sale of the churns around Danville] before we left here. I also learned after I had purchased and before we left here that he had not sold Tennessee and Texas, but I had made the agreement and I thought I would make the money out of it if I could. After getting into it I tried three times and could do nothing with it."

No proposition is better settled than "if the party defrauded would disaffirm the contract he must do so at the earliest practical moment after discovery of the cheat. That is the time to make his election and it must be done promptly and unreservedly. He must not hesitate; nor can he be allowed to deal with the subject-matter of the contract and afterwards rescind. The election is with him—he may affirm or disaffirm the contract but he cannot do both; and if he concludes to abide by it, as upon the whole advantageous, he shall not afterwards be permitted to question its validity. The party who would disaffirm a fraudulent contract must return whatever he has received from it. This is on a plain and just principle. He cannot hold on to such part of the contract as may be desirable on his part and avoid the residue; but must rescind *in toto, if at all."—Masson v. Bovet,* 43 Am. Dec. 651; s. c. 1 Denio, 69, and note; *Dill v. Camp,* 22 Ala. 249; *Barnett v. Stanton,* 2 Ala. 181.

It was unquestionably the duty of the complainant not to deal with the patent right acquired by him from Allison by making sales in Arkansas under it after he came into the possession of the knowledge of the fact that he had been duped, as he contends. As well was it his duty to offer to place Allison *in statu quo,* and he could not deprive himself of the power to do so by making sales of patent rights of certain counties in the State of Arkansas to other persons after he became informed of the existence of the alleged fraud. Having dealt with the property as his own, and failing to make the venture a business success, notwithstanding he conceived that

he had been defrauded by Allison, he must now be held to his bargain, unless his defense to the cross-bill can be sustained. He must stand the consequences of his own speculation, and be held to a ratification of the contract in its entirety. He will not now be allowed to visit his misfortune upon the head of Allison.—*Betts v. Gunn*, 31 Ala. 219.

The remaining question is whether the letters patent issued to Allison were invalid by reason of being an infringement of other patents. This is the sole matter of defense to the cross-bill not disposed of in what we have said as to complainant's right to maintain the original bill.

Much is said in the brief of complainant's counsel as to the "utter uselessness" of the invention, its novelty, utility and worthlessness. It would seem as between suitors, where the question involved is infringement *vel non*, the rule is, the presumption of patentability arising from the grant of letters must stand until overcome by proof, and the proof to overcome this presumption must be of such character as to establish the facts set up beyond a reasonable doubt. And this rule seems to prevail where the want of novelty and utility is invoked to overcome the presumption which arises from the grant of letters.—*Ross v. Montana*, 45 Fed. Rep. 424; *Washburn v. Beat 'em All*, 143 U. S. 275; *Cantrell v. Wallick*, 117 U. S. 689. Says the court in the case of *Cantrell v. Wallick, supra*: "The burden of proof is upon the defendants to establish this defense [prior use and want of novelty]. For the grant of letters patent is *prima facie* evidence that the patentee is the first inventor of the device described in the letters patent and of its novelty. Not only is the burden of proof to make good this defense upon the party setting it up, but it has been held that every reasonable doubt should be resolved against him."—See also *Lehnbeuter v. Holthaus*, 105 U. S. 94.

As to what is patentable, it would seem, is any invention which embraces a new device or element or a new combination of known devices producing a new and useful result.—*Parks v. Booth*, 102 U. S. 96; *Loom Co. v. Higgins*, 105 U. S. 580. Or a new combination of old elements, so as to produce a useful machine or a new

[Stephenson v. Allison *et al.*]

mode of applying old instrumentalities if it will produce a better result, are patentable.—*Wicke v. Ostrum,* 103 U. S. 461; *Lawther v. Hamilton,* 124 U. S. 1.

It appears that the court may examine the specifications and drawings upon which the letters patent are issued for the purpose of ascertaining the nature and character of the device or invention and compare it with the specifications and drawings which it is alleged to infringe.—*Wicke v. Ostrum, supra; Brooks v. Fiske,* 15 How. 212; *Hogg v. Emerson,* 11 How. 587. An examination of the specifications and drawings of the Allison patent and those of Wright and Cochran, shows that the Allison patent differs very essentially from either of them. We will not undertake to point out these differences, since this question is unnecessary under the view we take of the evidence in the record. The weight of the evidence as to the novelty and utility of the Allison patent, independent of the great weight given by the Federal courts arising from the presumption of the grant of letters, is with Allison. Conceding the letters patent only create a *prima facie* presumption, we are of the opinion that the chancellor was correct in finding upon the evidence that the churn was novel and useful.

There is no merit in appellant's point as to the misdescription of the lands in the register's report of sale. The original decree condemning the land to the satisfaction of the mortgage lien properly describes it.

The notes secured by the mortgage contained the stipulation to pay "ten per cent attorney's fees if not paid at maturity." It was the manifest intention of the parties, maker and payee, that the maker should pay ten per cent. upon the amount due upon the notes, after maturity, in the event the payee was compelled to employ attorneys to enforce their collection. The purpose of the stipulation was to reimburse the payee or his assignee who, in consequence of the debtor's default, should be put to the expense of employing an attorney to render services in the enforcement of his demand. *Tompkins v. Drennen,* 95 Ala. 466. That such contracts are legitimate and enforceable under the decisions of this court, is beyond the pale of controversy. And there is no good reason why they should not be. Courts every-

29

where recognize the right of all persons *sui juris* to enter into such contracts as they may choose, and to put into them any term or stipulation they may agree upon, so long as the contract violates no rule of law. Many cases involving similar stipulations to the one under consideration, have been recognized by this court as binding and enforceable. And, so, too, it is competent for the contracting parties not only to stipulate for a reasonable attorney's fee to be paid by the maker of a note in the event of the collection after default by an attorney, but to fix the amount of the reasonableness of such fee. This proposition is clearly recognized in the cases of *Wood & Bros. v. Winship Machine Co.*, 83 Ala. 424, and *Ledbetter & Co. v. Vinton*, 108 Ala. 644. In each of these cases there was a judgment by default for the entire amount due upon the note, in which the fee was fixed at ten per cent, including this fee, without the intervention of a jury to assess the damages. In each of the cases this court upheld the judgments.

The only case we have been able to find which can be construed in the remotest degree to militate against these, is the case of *Camp, Glover & Co. v. Randle & Co.*, 81 Ala. 240. In this latter case the note also contained a stipulation to pay ten per cent attorney's fee, and a charge was requested "that if the jury believe the evidence, they will find for the plaintiffs the amount of the notes and interest at the rate of 12 *per centum per annum* and a reasonable attorney's fee." This court said: "The plaintiff offered no proof of the value or amount of a reasonable attorney's fee for bringing the suit. The charge requested was properly refused, because it claimed a finding on that phase of the case, without any testimony to support it." It needs no further comment to demonstrate that the court did not decide that the sipulation in the note sued upon was a stipulation for a reasonable attorney's fee which required proof of its reasonableness before a recovery could be had upon it, or that the stipulation by which the amount of such fee was fixed did not furnish sufficient proof of its reasonableness. Where such a stipulation inserted in a note or contract, becomes a convenient cloak for usury, we do not doubt it may be assailed by the maker in this respect,

and he would be allowed to defeat a recovery to the same
extent as in other cases where usurious notes or con-
tracts are sought to be enforced.    But the stipulation
for an attorney's fee which is reasonable, has no vitiat-
ing infirmity which subjects it to the defense of being in
violation of the statute against usury.—*Shelton v. Ault-
man & Taylor Co.,* 82 Ala. 315; *Munter v. Linn,* 61 Ala.
492.

Furthermore, where the note is subject to this infirm-
ity by reason of the amount of the fee fixed in it, the
maker, in order to avail himself of it, would have to spe-
cially plead it.—*Kilpatrick v. Henson,* 81 Ala. 464.

Nor is such a stipulation a mere penalty to be paid by
a written promise.—*Wood & Brothers v. Winship Ma-
chine Co., supra.*

The record in the cause under consideration discloses
that no objection or defense was made by the appellant
by his pleading or otherwise to the stipulation in the
notes under discussion.   If he conceived that it vitiated
the notes to any extent on account of rendering them
usurious, he should have made it known by his answer
to the cross-bill.

It is true the record fails to disclose that any evidence
was offered to prove that the attorneys in the cause ren-
dered any services for the holders of the notes.   The
pleadings filed in the cause in behalf of the owners of
the notes to enforce their collection, disclose their ap-
pearance and necessarily the service performed in their
preparation.   Besides they are officers of the court, and
presumably appeared in open court as counsel represent-
ing their clients, and presumably their appearance and
the services rendered by them were with full authority
to do so, either under an express or implied promise to
receive compensation for such services.   It would have
been a work of supererogation and a useleess accretion
of costs to have required them to propound interroga-
tories to themselves to prove the rendition by them of
services in the cause; a fact as well known to the chan-
cellor as to themselves.   Indeed, the preparation of the
note of testimony and the submission of the cause for
final hearing and other orders requested of the court,
were services rendered by them in the very presence of

the chancellor and under his immediate supervision. His knowledge of services rendered by them was just as much a knowledge of a fact upon which he was authorized to act, as the knowledge of a circuit judge that a defendant has made default, or says nothing in opposition to the rendition of a judgment, when a judgment *nil dicit* is asked for.

We find no error in the record, and the decree must be affirmed.

SHARPE, J., dissents as to allowance of attorney's fee without proof of its reasonableness and the employment of the attorneys.